**GYPSY OIL CO. v. SCHONWALD et al.**

No. 14474—Opinion Filed Dec. 16, 1924.

(Syllabus.)

1. **Vendor and Purchaser—Fraud or Mistake in Contract — Nonassignability of Rights to Subsequent Purchasers.**

Fraud or mutual mistake pleaded as a ground for rescission or reformation of an instrument affecting real property is personal to the grantor or maker of the instrument. It does not render the instrument void, but voidable. It is not capable of being assigned or transferred so that a subsequent purchaser charged with knowledge of such instrument can to his own advantage avail himself thereof for the purpose of securing an interest by reason of his subsequent conveyance which he would not have, but for the modification or change of the first instrument which he seeks to have made.

2. **Receivers—Right to Appointment.**

In determining whether or not a receiver should be appointed to take charge of property or any part thereof involved in litigation, the court not only has the right, but should consider the petition filed by the plaintiff, to determine whether or not the same pleads a cause of action in favor of the plaintiff seeking to have the receiver appointed, and this is in furtherance of a determination as to whether or not there exists a probability that the relief sought may ultimately be obtained by a judgment based on the petition in the action. If the petition fails to state a cause of action for relief against a party, a receiver should not be appointed so as to in any wise affect the party to the action against whom the petition fails to plead a right to relief.

3. **Same—Oil and Gas — Leases—Rights of Parties.**

In the instant case, C. executed an oil and gas mining lease to G. In addition to the ordinary provisions, this clause was inserted: "If the leased premises are hereafter owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as an entirety, and royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased acreage, and the lessee shall not be bound by any change in the ownership of the leased acreage, unless and until notified thereof in writing, and when such change is affected by will, deed, or other written instrument, said notice shall be accompanied by such instrument, or a duly authenticated copy thereof. This stipulation, and all other stipulations, covenants, conditions, agreements and terms of this instrument shall extend to, and be binding upon the heirs, executors, successors, assigns, and the legal representatives of the parties hereto." The lease covered 160 acres owned by C. in one tract. Subsequent thereto, C. sold and conveyed a fractional interest in the oil and gas on the west half of said tract to S. Held, that the conveyance made to S. was subject to the terms and provisions of said clause in said lease. Held, further, that said clause is not unreasonable, is not without consideration, and that the owner of the fee had a right to burden his premises with such a covenant or agreement; and that the same is not violative of public policy. Held, further, that the lessee in said lease has the right to operate the premises and pay out the royalty in accordance with said clause, without interference by the subsequent purchaser, and that the petition failed to set forth facts which show such probability of recovery by the plaintiffs as to warrant the appointment of a receiver.

Error from District Court, Noble County; Claude Duval, Judge.

Action by Dave Schonwald and others against the Gypsy Oil Company et al. Judgment for plaintiffs, and defendant named brings error. Reversed.

James B. Diggs, William C. Liedtke, and Redmond S. Cole, for plaintiff in error.

Bellatti & Brown, Dale & Bierer, Sam K. Sullivan, and R. J. Shive, for defendants in error.

Harry O. Glasser, amicus curiae.

BRANSON, J. At all times herein mentioned, Dillard H. Clark was the owner in fee of lots 3 and 4 and the south half of the northwest quarter (referred to herein as the N. W. ¼) of section 2, township 24 north, range 1 west, Noble county, Okla. He and wife, Ella, executed an oil and gas mining lease to W. E. Templeman, on October 25, 1916, for a term of years, and as long thereafter as oil and gas was produced. It was, in turn, assigned by the said lessee to the plaintiff in error, Gypsy Oil Company, a corporation. August 15, 1921, in lieu of the said lease, Dillard H. Clark executed to the plaintiff in error an oil and gas lease on the same land. The provisions in said lease questioned herein are, first, the royalty clause. It is as follows:

"To pay the lessor as royalty one-eighth part of all the oil saved from that produced, such part to be run to the lessor's credit in the pipe line, which lessee may connect with the well; or at lessee's option to pay to lessor one-eighth part of the market value of such oil sold at the time of its production in the field where produced, and in this last event, settlement shall be made by the lessee by the 15th day of each month, for the royalties for the preceding month"

—and, second, a provision, to wit:

"If the leased premises are hereafter owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as an entirety, and royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased acreage, and the lessee shall not be bound by any change in the ownership of the leased acreage, unless and until notified thereof in writing, and when such change is affected by will, deed, or other written instrument, said notice shall be accompanied by such instrument, or a duly authenticated copy thereof. This stipulation, and all other stipulations, covenants, conditions, agreements and terms of this instrument shall extend to, and be binding upon the heirs, executors, successors, assigns, and the legal representatives of the parties hereto."

On the 23rd day of June, 1922, said Dillard H. Clark executed a so-called "mineral deed" to one of the plaintiffs, Dave Schonwald, which "mineral deed" purported to convey to the grantee a one-fourth interest in the grantor's right to oil and gas and other minerals, in and under a certain portion of said land, to wit, lot 4, and the southwest quarter of the northwest quarter of section 2, township 24 north, range 1 west, or the west half of the 160-acre tract, which "mineral deed," after the granting clause, recited the following:

"Said land being now under an oil and gas lease, executed in favor of the Gypsy Oil Co. It is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease."

The other defendants in error herein derive their interests, whatever they may be, through said mineral deed to Dave Schonwald, and their interests are contingent upon his. Under this lease, the defendant, the Gypsy Oil Company, developed said 160-acre tract, and found large deposits of oil an the leased premises. For a long time prior to the institution of this suit, and at the time of its institution, the lessee was producing large quantities of oil and gas from the land covered by the lease. In accord with the terms and provisions of the lease, the lessee was paying out the royalty. The wells drilled on the above described west half of said northwest quarter were much more productive of oil than the wells drilled upon the east half, and it is to be noted that the west half was the land incorporated by description in the mineral deed.

This fact was no doubt the moving cause of this lawsuit, and it ranges around the above-quoted provisions of the lease, and the above-quoted provisions of the "mineral deed."

Plaintiffs plead fraud and mistake in a too voluminous manner to undertake even to quote the substance in this opinion, but the gist of which is set out in the following paragraphs from plaintiffs' petition:

"And the said Dillard H. Clark did not know and was not advised at the time of the execution of said lease, Exhibit 'B,' that said recited and quoted paragraph was in said lease, or that said lease, Exhibit 'B,' was in form and terms different from said former lease, Exhibit 'A,' excepting gas royalties only, or that any of his rights which he had retained to himself in and to the one-eighth royalty in the oil to be obtained or produced from said tract of land was in any wise impaired, and did not know and was not advised that any clause was being placed in said lease which might be so construed as to deprive him of his free and full vested right to alienate and transfer the same. And the said Dillard H. Clark was, therefore, overreached, deceived, and imposed upon in the placing of said clause referred to in said renewal lease, and the said Dillard H. Clark did not know until a long time thereafter that said clause was in said lease, and would not have executed the same had he known that said clause was in said lease, and would not have executed said lease if he had known that there was any clause therein which might be so con-

strued as to in any way infringe upon, impair, or interfere with the full right which he possessed, and which plaintiffs allege he thereafter possessed, to transfer his right in and to the one-eighth royalty in the oil and gas which he reserved to himself under the terms of said lease on said land.

"And by reason of which imposition and 'raud upon said Dillard H. Clark, the plaintiffs allege that said clause in said lease is wholly without consideration, nugatory, and void, and that the defendant Dillard H. Clark, at all times under said lease, Exhibit 'B,' same being a renewal and extension of said lease Exhibit 'A' possessed and retained unto himself the full right, power, and authority to transfer in severalty and in respect to separate tracts said one-eighth royalty interest in and to the oil and gas to be produced by the defendant Gypsy Oil Company, under the terms of said lease, Exhibit 'B,' from the above described quarter section of land.

"These plaintiffs further allege that the said clause particularly referred to and above quoted, if the same be so construed as to take or attempt to take from the said Dillard H. Clark his full and free right to sell, transfer, and assign part or all of his said one-eighth royalty interest in and to the oil and gas to be produced from said tract of land, was a specific property right in said land vested in, and retained in the said Dillard H. Clark under the terms of said lease, Exhibit 'B,' and that the said clause particularly referred to and above quoted, if so construed as to impair or destroy that right, was and is void on the high ground of public policy, and for the reason that it was an unlawful attempt, if done knowingly by the defendant Gypsy Oil Company, as plaintiffs allege it was done, to take from the said Dillard H. Clark a right which he possessed under the law to hold, possess, transfer, sell, convey, and assign said royalty interest to whomsoever, in such part, and when he pleased, and the attempt of the defendant Gypsy Oil Company made, by the insertion of said clause particularly above referred to in said lease, was not only a fraud and imposition upon the said Dillard H. Clark, but the same was contrary to the inherent property rights of the said Dillard H. Clark, as the owner of said tract of land, and the remaining owner and holder of said one-eighth royalty interest in the said oil and gas reserved to him to be produced from said tract of land, to sell, transfer, and assign the said one-eighth royalty interest, or any part thereof, to whomsoever, in what part, and whenever he pleased; and the attempt of the Gypsy Oil Company to restrict the same and deprive the said Dillard H. Clark of said right was contrary to public policy, unconscionable, inequitable, and void."

The petition also pleads the execution of the above mentioned leases, and the recordation thereof, prior to the mineral deed; the execution of the mineral deed to Schonwald and the assignment of a fractional interest by Schonwald to the other plaintiffs. The plaintiffs further plead:

"That under the prorata and entirety provision of said lease * * * the Gypsy Oil Company claims the plaintiffs are only the owners of a proportionate part of the oil and gas royalties and asserts that if said clause be so construed, it is fraudulent and void, because of fraud and imposition and overreaching practiced by the Gypsy Oil Company on the defendant Dillard H. Clark"

—and—

"Fraudulent and void because that the said provision was and is subversive of the rights of the said Dillard H. Clark, and injurious to the general welfare of the public, and, therefore, contrary to public policy and void, as aforesaid."

Plaintiffs further plead that the west half of said 160 acres is producing practically 10,000 barrels of oil per day, of the value of $24,000, and that the rights of the plaintiffs therein are more than $22,500 per month, and that the Gypsy Oil Company, contrary to the rights of the plaintiffs, had paid one-half of the royalty moneys, which belonged to the plaintiffs, to Dillard H. Clark, and Dillard H. Clark has no right to plaintiffs' royalty from the west half of the tract of land. The petition closes with a prayer in the alternative, only the first clause of which is material to the controversy now before the court, and is as follows:

"Wherefore, premises considered, the plaintiffs pray judgment against the defendants that these plaintiffs may be adjudged and decreed to be the owners of the entire undivided one-fourth interest in and to all of the one-eighth royalty in all oil and gas and oil and gas rights in, under, in respect to, which has been produced from and which may be produced from said lot four (4) and the southwest quarter of the northwest quarter section two (2), township twenty-four (24) north, range one (1) west of the I. M., Noble county, Okla., and in and to all other rights granted to the said Dave Schonwald by said instrument. Exhibit 'C' therein and pertaining thereto. And that the defendants and all persons holding by, through or under them be forever barred from claiming, interfering with or withholding from the plaintiffs their said rights, and that pending this action a receiver may be appointed to receive, take charge of, hold and possess pending this suit, all of the one-fourth of the one-eighth royalty interest in and to all of the oil and gas in and under which has been and which may be produced from said described west

tract of land, and of the proceeds of the oil and gas produced from said west tract coming to said Dillard H. Clark on account of his remaining present royalty interest therein, or so much of said oil and gas royalty interest, rights and moneys as this court of equity may hold a receiver should be appointed for and concerning, and to hold and do with the same as the court may order and require, and that the plaintiffs may have an accounting with said defendants for such oil and gas rights and interests and the moneys received by the defendants, each or either of them, therefor and therefrom, and which are being wrongfully withheld from the plaintiffs by the defendants, or either of them, and the plaintiffs may have judgment therefor, and for the costs of this suit and all other just, legal and equitable relief."

On the 9th day of May, 1923, application for appointment of receiver was sustained by the district judge. The Gypsy Oil Company prosecutes this appeal, to have the appointment vacated.

It contends that the said provision of its lease as to the apportionment of royalty is valid and binding on all parties to this litigation; that it has a right under said provision to operate said premises for oil and gas and to pay the royalty as provided therein; and that no extra burdens should be imposed upon it by reason of any attempted conveyance by the lessor to Schonwald or otherwise of any interest, either in fact inconsistent with the provisions of said lease, or contended to be inconsistent therewith.

The plaintiff in error argues that the fraud alleged as a basis for relief in equity, even if it existed, could only be available to the party on whom the fraud was perpetrated, and that his rights as to a cause of action based thereon are personal, and not assignable.

Fraud does not render a contract void, but merely voidable, if the injured party elects to pursue his remedy growing out of the same. Gray v. Ulrich et al., 8 Kan. 112; Yeamans v. James et al., 27 Kan. 195; Crocker v. Bellangee, 6 Wis. 619; Cowan v. Barrett et al., 18 Mo. 258; Leach v. Fowler's Devisees, 22 Ark. 143; Milwaukee R. R. Co. v. Milwaukee & Western R. R. Co., 20 Wis. 183; Graham v. La Crosse et al. (U. S.) 26 L. Ed. 106.

The defendants in error argue at great length that the mistake pleaded in their petition was a mistake of fact between Clark and Schonwald, in that neither Clark nor Schonwald at the time of the execution of the mineral deed was conscious of anything being in the lease owned by the Gypsy which would restrict Clark in attempting to convey an absolute interest in the mineral on a particular fractional part of the land covered by the lease. In arguing the sufficiency of the petition on the question of such mistake of fact, plaintiffs say that there is no doubt that Clark intended to sell, and Schonwald intended to purchase a royalty interest in the minerals under the west half of the quarter section only, and that Schonwald did not intend to purchase an interest in any other part of the land. If this contention is conceded, we fail to perceive what the plaintiff in error has to do with this matter. It would only go in proper case to a reformation of the mineral deed executed by Clark to Schonwald. Whether or not this instrument, which was executed long after the Gypsy lease was placed of record, correctly expressed the intention of the parties thereto, is a matter with which the plaintiff in error is not concerned.

It would appear from this line of discussion that counsel for the plaintiffs, or defendants in error, herein are seeking in this suit to have the court compel the Gypsy to abandon compliance with said clause, and provision of its lease, in so far as the said clause gives it the right to pay out the royalties to owners of a fractional interest in the land pro rata. If in fact the mineral deed could be reformed on the ground of mutual mistake, so as to make it conform to what the plaintiffs contend was the purpose and intention of Clark and Schonwald, the question would then arise as to whether it could be effective as against the lessee in the face of this clause in the lease. If there were a mistake, it was a mistake between Clark and Schonwald. Plaintiffs apparently realize that if such reformation were had as to the mineral deed, it would doubtless be unavailing, unless the clause in question were held not to be binding upon subsequent purchasers from Clark even with constructive notice of all the terms and provisions of the recorded lease. Clark, the lessor, is not in this suit asking to have the lease to the plaintiff in error reformed, and to that end pleading mutual mistake, fraud, or any other ground as the basis for such relief. The plaintiffs in this action have no standing in court to do so. Clark evidently refused to be a plaintiff, and is joined as a defendant by virtue of the statutory provision. The record fails to disclose that he is asking any affirmative relief as against the plaintiff in error. Even if the so-called mineral deed should be reformed for any

grounds so as to show a conveyance to Schonwald of a fractional part of the royalty on the west 80 only, such attempt on the part of Clark would not be availing, if in fact the said pro rata clause of said lease is a valid burden imposed upon the interest in the property retained by Clark after the execution of the lease. If said clause is a valid clause, Clark in executing the lease placed a restriction upon his power to alienate any part of his estate in the land covered by the lease, with a right on the part of the subsequent grantee of such fractional interest to participate in the royalty, except in accordance with the said lease provision itself. The lessee, the plaintiff in error in this court, has been complying with the terms of its lease, and the question really at issue is, Can it be required to accommodate itself to the wishes of a subsequent purchaser of a fraction of the real estate, or mineral interest therein, so as to allow him to secure a part of the royalty from a fractional portion of the land, under a conveyance made by the lessor, subsequent to the recordation of the lease, and against the acquisitions which the lessor had contracted with the lessee in the lease itself? We take it that if said clause is a valid contractual provision, after the premises have been found to be productive of oil and gas, and the primary purpose of the lease, to wit, the development, has been fully carried out by the lessee, it cannot be compelled to do other than pay the royalty, as per the terms of the lease, and whatever contract was made between the lessor and a subsequent purchaser could not be made effective to alter the duty of the lessee as to the royalty interest other than is set forth in its lease contract. If the mineral deed be not reformed, it shows on its face that it is made subject to all the terms, and provisions of the lease, and its very provisions constitute a ratification by the lessor of the terms of the lease and an acceptance of its terms by Schonwald.

We cannot say that the clause drawn in question is unreasonable. Neither can we say that it is arbitrary or accompanied with a secret intent and desire on the part of the plaintiff in error, in securing the lease, to put an unwarranted and injurious restriction upon the handling of the real estate by the lessor and his right to make any disposition thereof.

A small amount of practical knowledge of the oil and gas industry must be persuasive that in numerous cases a just and equitable division of the royalty, in the absence of such clause, is all but an impossibility. Many tracts of land, rich in the production of oil, are subdivided by their owners until the tracts become so small that it is improbable that any well will be drilled upon all the tracts, if, indeed, they are not so small that it is impossible to drill upon each tract. In the instant case, an accurate survey of the west 80 acres might disclose that the wells were located very near the dividing line between the east and the west 80.

Kimbley v. Luckey, 72 Okla. 217, 179 Pac. 928, involved the rights of a subsequent purchaser of a fraction of the tract covered by an oil lease, not containing a clause such as now here. It was there held adversely to the contention that the owner of the fee in the fraction had any interest in royalty produced from wells not on the fraction. Again, the same was held on the same contention in Pierce Oil Corporation v. Schact et al., 75 Okla. 101, 181 Pac. 731. Each of these cases adjudged that the subsequently acquired title holder to a part of the leased area should receive none of the benefits arising from the lease unless the well was located on his tract.

These cases, and those from other courts, cited, leave us not unmindful that the nature of oil and gas is such that a well may be actually located upon the portion not sold by the lessor, but so near the line of a subsequent grantee of part of the realty that a large per cent. of the production comes from that owned by the subsequent purchaser. This well-known fact makes such a condition exceedingly inequitable in numerous cases. Only recently this court adjudged in Galt v. Mescher, 103 Okla. 272, 229 Pac. 522, that the lessee had a right to develop the land as a unit, and the purchaser of the royalty on the south 80 of a 160-acre tract had no interest in a well drilled just four feet from the dividing line, though much oil came from the south 80. This in reality is taking that which belongs to the south 80 "within the law." The lessee was under no legal obligation to drill an offset, but in fact has the right to drill wells along and near the line of the subsequent purchaser's part, and thereby in many cases take practically, if indeed not all, the oil from the subsequent purchaser's tract, without the owner receiving any part thereof. This court in the last-named case said in effect that the protective remedy is by contract made between the parties at interest.

In the instant case the lessor-owner of the entire 160 acres executed the lease on it as an entirety. That he had the right

to place therein any provision which he deemed either to his advantage or to the advantage of a subsequent purchaser of a fractional interest in the land or the mineral estate therein, seems clear as an incident to his ownership. He had the right to limit his sale thereof or manner of the use thereof as to its entirety or any acreage within the whole, or any estate arising from any part thereof. What he did, in fact, was in the nature of a covenant which burden his remainder to the extent that one purchasing subsequent to said lease contract and subject to it acquired an interest in the royalty on the whole acreage, prorated as the fraction thereof purchased bore to the entire tract. We think it is well recognized that the whole estate in the mineral may be, as to sale thereof, separated from the other estates of the fee. When so done, interests therein are subject to contract. The clause here in question was, as to subsequent agreements of sale, tantamount to a severance of the owner's estate in the oil and gas mineral from the estate in the land itself, and covenanting that owners of a fraction of the whole estate in either should share in the oil and gas as per the pro rata clause thereof. If the purchaser succeeds by contract to the west 80 or a fraction thereof as to fee or mineral right, he takes same burdened with that agreement in the lease, and as the contract affects the mineral rights, it goes to all underneath the acreage covered by the lease.

Nor do we think such a covenant charging the estates in the fee with such a burden is subject to the objection urged that it hampers the transmission of the land or the remainder estate, or operates as an impediment to commerce or void for public policy. We think such agreements in their nature are covenants, and they can properly be held as binding on successors to the title or interest therein acquired by any one in privity with the covenanting parties, and that the same are equally binding on all, both where there is a burden to be endured or a benefit to accrue. Nor need such an agreement or covenant have a separable consideration to support it. Its binding effect on the parties and their successors in interest finds support in the considerations which move the execution of the instrument itself. Even if justification on other grounds were lacking, expediency and equity as to distribution should enforce recognition of such a provision. Abstractly, we cannot look with favor upon that which restricts the owner's contractual disposition of property, and every estate that may

be carved out of the same. Here, however, the parties were contracting as to property, the nature of which is such that it may be apparently produced from A.'s land, but produced in fact from B.'s land, or vice versa; and from geological strata, where mathematics cannot go. or be used to determine how much is produced from one, or how much from the other. Where the leasehold is divided into small tracts, no rule can be devised to determine from which owner's subdivision the oil in fact came, and nothing but dissatisfaction to the owners of such subdivisions can result from any system of unit development or bookkeeping of proceeds, when small areas may and do produce enormous wealth. As indicated above, the provisions of the contract between the owner of the entire estate and the producer, which purposes forestalling inequitable conditions which would otherwise arise between such subsequent purchasers of fractional interest, should be sustained on principle. Certainty as to the individual interests in such properties purchased subject to the lease, and developed as a unit. cannot be foreign to any wholesome provision of the law. When such conditions arise certainty should warrant a disregard of strained objection, when persons acquire interest charged with knowledge of such provision.

There is nothing in the petition which warranted a receiver, or in interfering with the operation of the premises, or paying the royalty as by the lease provided. That the court can and should consider the petition for the purpose of determining whether it states a cause of action on which probable relief may be secured against the defendants, we think is well settled. 34 Cyc. 35, 111, 112; Farwell v. Babcock, 27 Tex. Civ. App. 162, 65 S. W. 509; Wheeler et al. v. Pullman Iron & Steel Co., 143 Ill. 197, 32 N. E. 420; Hays v. Jasper Land Co., 147 Ala. 340, 41 South. 909; Elwood v. First Natl. Bank, 41 Kan. 475, 21 Pac. 673; People ex rel. Wright v. Wigley et al., 155 Ill. 491. 40 N. E. 300; Bank of Florence v. U. S. Savings & Loan Co., 104 Ala. 297, 16 South. 110; Robinson v. Dolores No. 2 Land & Canal Co. et al., 2 Colo. App. 17, 29 Pac. 750; Tomlinson v. Ward, 2 Conn. 396; Pollard et al. v. Southern Fertilizer Co., 122 Ala. 409, 25 South. 169; Clark et al. v. Ridgely et al., 1 Md. Ch. Johnson's Edition, 70; Saxon v. Southwestern Brick & Tile Mfg. Co., 113 La. 637, 37 South. 540; Grays Harbor Commercial Co. v. Fifer, 97 Wash. 380, 166 Pac. 770; Willard Oil Co. v. Riley et al., 29 Okla. 19, 115 Pac. 1103.

The cause is reversed, with directions to discharge the receiver.

NICHOLSON, JOHNSON, GORDON, and WARREN, JJ., concur. HARRISON, J., absent and not participating.

Note.—See under (1) 13 C. J. § 303; (2) 34 Cyc. pp. 36, 111, 112; (3) 27 Cyc. p. 742 (1926 Anno). 34 Cyc. p. 36.