STANOLIND OIL & GAS CO.

v.

THOMAS GILCREASE FOUNDATION.

No. 4954.

Court of Civil Appeals of Texas.

El Paso.

June 24, 1953.

Rehearing Denied Sept. 16, 1953.

Carlton R. Winn, Frank J. Scurlock, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for appellant.

Stubbeman, McRae & Sealy, Midland, Lester Whipple and Robert Hausser, San Antonio, McMahon, Springer & Smart, Abilene, for appellee.

FRASER, Justice.

This is an appeal from the District Court of Ector County, Texas, and from a summary judgment of said court. The case involves the construction of an oil, gas and mineral lease executed and delivered by Gilcrease Oil Company to Stanolind Oil & Gas Company, dated April 17, 1946, but executed and acknowledged June 5, 1946. The trial court granted the motion of plaintiff for a summary judgment, and for purposes of clarity plaintiff will be referred to in this opinion as "Gilcrease" or "plaintiff", as was the case in the trial court, and defendant as either "defendant" or "Stanolind".

Plaintiff, Thomas Gilcrease Foundation, had acquired its title from the Gilcrease Oil Company, which corporation had entered into a lease with Stanolind covering oil, gas and mineral rights on "the North ½ of Section 32, Lot 44, Twp 1 S, T & P Ry. Co. Survey, in Ector County, Texas," which lease contained certain typewritten provisions, as well as the usual printed provisions. Although the description in said lease referred to the north half of said Section 32, plaintiff actually owned an undivided ¾ interest in the mineral rights of the N.E. ¼ of said section, and an undivided ¼ interest in the N.W. ¼ of said Section 32. In addition to the usual provisions, the lease between plaintiff and defendant had attached to it a rider which contained a provision which has been described as an "entirety clause". This rider recited as follows:

"Lessor reserves unto itself, its successors and assigns, and excepts from this lease contract, an undivided one-eighth (⅛) of seven-eighths (⅞) of eight-eighths (⅞) oil, gas, casinghead gas, and other minerals in place, and if, as and when produced, saved and sold, from the lands above described, until out of the proceeds from such fractional production interest lessor has received the sum of $160,000.00, being $500.00 per acre upon the 320 acres above described, said fractional production interest allocated to retirement of the oil reservation amount above shall have the legal status of an overriding royalty and shall be free and clear of all development and operating expenses and charges of every nature, such interest, however, to bear its own ad valorem taxation, and its proportionate share of any gross production, pipe line, and/or occupation tax, federal or state; upon retirement of the oil reservation amount above shown, said fractional production interest shall automatically pass to and vest in lessee, its successors and assigns.

"The oil reservation amount above is not a personal obligation of lessee, but shall be derived only out of production, as above shown, and the creation of said oil reservation amount shall in no wise impose upon lessee any development obligation other than may be created by the specific terms and provisions of this lease.

"If lessor owns an interest in the oil, gas and other minerals in said lands

less than the entire fee estate in said oil, gas and other minerals, then the oil reservation amount hereinabove provided and the fractional production interest allocated to its retirement shall be reduced proportionately, the lessor herein being entitled to that part of the oil reservation amount above created as is proportionate to the title of the lessor in the oil, gas and other minerals.

"If the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage."

In addition to the undivided interests held by Gilcrease, other parties had interests as appears from the following diagram:

Production was obtained in much larger volume from the northwest one-quarter than was obtained from the northeast quarter. Gilcrease, as plaintiff, brought suit and through his motion for summary judgment in the trial court asserted that he was entitled to what would amount to one-half of the $\frac{1}{8}$ royalty on oil produced on the entire north half of Section 32, basing his position on the said "entirety" clause, wherein it was recited that holders thereunder would be paid in proportion to the amount of acreage they owned bore to the entire acreage of the lease in question.

Defendant Stanolind filed its answer and also its motion for summary judgment, contending that plaintiff was entitled to $\frac{3}{4}$ of the one-eighth royalty on the N.E. $\frac{1}{4}$, and one-fourth of the one-eighth royalty on the

N.W.¼, which was the interest owned by him in the leased premises. The trial court granted plaintiff's motion for summary judgment and this appeal is predicated on that action by the trial court.

█ It has long been the rule in Texas and several other states, to-wit, Arkansas, Indiana, Ohio, Oklahoma, and West Virginia, that a party is entitled to be paid royalty only from the wells producing oil on his particular tract of land. Japhet v. McRae, Tex.Com.App., 276 S.W. 669; Stephenson v. Glass, 115 Tex. 192, 279 S.W. 260; Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988; Mueller v. Sutherland, Tex. Civ.App., 179 S.W.2d 801, writ refused. Plaintiff asserts, however, that the so-called "entirety" clause relieves the parties from the effect of this rule, in that it makes specific provision to the contrary.

█ This so-called entirety clause has been upheld in at least three other states, to-wit, Oklahoma, New Mexico and Illinois. Eason v. Rosamond, 173 Okl. 10, 46 P.2d 471; Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864; Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885. As far as we can ascertain this clause has not been directly passed upon in this state. It is clear from examination of the above and other related cases that if the entirety clause applies to this lease, then a different rule than that laid down by the Japhet v. McRae and related cases would govern. Plaintiff asserts that he is an owner "in entirety or in separate tracts" as described in the entirety clause contained in the rider attached to the lease. Examination of available cases compels us to the conclusion that this position of plaintiff cannot be maintained for the following reasons: First, he is and was the only owner of the two tracts, and it is thought that this provision was intended to apply where the lessor had subdivided or sold part of his interest subsequent to the lease, or had already done so at the time of the lease to undisclosed grantees. Such does not appear to be the case here. Second, because plaintiff as lessor owned in entirety all that he conveyed by the lease, and it must be noted that the entire-

ty clause itself uses the expression "and shall be divided among and paid to such *separate owners*". (Emphasis ours.) We therefore hold that the entirety clause as such is not applicable to the lease in question for the above reasons, meaning that plaintiff does not qualify under the terms of said entirety clause. It must be noted and admitted that of course the lease between Gilcrease and Stanolind could not affect or involve the other co-owners or change in any way the contractual relationship existing between them and Stanolind.

In each of the four cases heavily relied upon by appellee, to-wit: Eason v. Rosamond, 173 Okl. 10, 46 P.2d 471; Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864; Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E.2d 760; Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885, lessor created a subsequent division of the interest originally leased, which resulted of course in a subdivision of the interest or tract with the consequent multiplicity of ownership, which condition was created by lessor. The court in these four cases found that this situation created "an interest in severalty on separate tracts" and thereby brought the so-called entirety clause into full force and effect. The lessor in those cases could and did validly impose that condition (entirety clause) because the people affected by same held under and through lessor and became owners of separate tracts by virtue of the lessor's own act. That condition does not here exist.

█ This lease contained the usual "lesser estate" clause, providing that lessor shall be paid royalty in proportion which his interest bears to the entire fee, in case he does not own the entire mineral right. It is thought this lesser estate clause requires the lessee to pay royalty in proportion to the ownership of lessor, which in this case is ¾ of the royalty on the northeast quarter of said Section 32, and one-fourth of the ⅛ royalty on the northwest quarter of said Section 32. This is the only construction that appears can be plac-

ed on or given to the so-called lesser estate clause. Carlock v. Krug, 151 Kan. 407, 99 P.2d 858. Any other construction it seems would lead to confusion and injustice, as for example, if Gilcrease were to convey a small part of his ¾ interest in the northeast quarter, the grantee of same would be entitled to the oil produced from the northwest quarter, to which he has no title, and in which he owns no interest.

This holding will also dispose of appellee's point 5, relating to the oil payment reservation, as would necessarily follow that the same principle would apply to the allocation of oil toward the retirement of the oil reservation.

Because of these issues involved, the decision of the trial court is reversed and the cause remanded.