THOMAS GILCREASE FOUNDATION V.
STANOLIND OIL AND GAS COMPANY

No. A-4377. Decided March 24, 1954.
(266 S.W. 2d Series 850)

*McMahon, Springer, Smart & Walter,* of Abilene, *Lester Whipple* and *Robert Hausser,* of San Antonio, *Stubbeman, McRae & Sealy, Tom Sealy* and *F. H. Pannill,* of Midland, for petitioner.

The Court of Civil Appeals erred in not holding that an oil and gas lessor who owned different undivided mineral interests in separate portions of land under an oil and gas lease which contains a "royalty apportionment" provision is entitled to re-

ceive a uniform royalty from the production from any part of the leased premises in proportion to his acreage ownership in the total leased acreage, and in failing to hold that a production payment is payable out of a uniform fraction of the production from all the land covered by an oil and gas lease, despite the lessor's ownership of different undivided mineral interests in separate portions of such land, where such lease contains a "royalty apportionment" provision. Harley v. Magnolia Petroleum Co., 378 Ill., 19, 37 N.E. 2d 760; Hooks v. Neill, 21 S.W. 2d 532; Humble Oil & Refining Co. v. Harrison, 146 Texas 216, 205 S.W. 2d 355.

*Turner, Rodgers, Winn, Scurlock & Terry, Carlton R. Winn, Frank J. Scurlock,* of Dallas, *L. A. Thompson,* of Tulsa, Okla., and *J. K. Smith,* of Fort Worth, for respondent.

Plaintiff, having by deed, and a written agreement, conclusively cited and agreed that it is the owner of only an undivided ½ interest in the northwest quarter; an undivided ¾ interest in the northeast quarter of section 32, cannot now he be heard to contradict these recitals, and therefore cannot recover any additional amount. Stephenson v. Glass, 115 Texas 192, 279 S.W. 260; Veal v. Thomason, 138 Texas 341, 159 S.W. 2d 472; Brown v. Smith, 141 Texas 425, 174 S.W. 2d 43.

MR. JUSTICE CULVER delivered the opinion of the Court.

Suit was brought by petitioner, Gilcrease Foundation, against the respondent, Stanolind Oil and Gas Company in the district court for declaratory judgment to sustain its right to receive as royalty under an oil and gas lease, ½ of the 1/8th royalty produced from all of the land covered by such lease in the proportion that its interest bore to the entire tract and the corresponding right to the satisfaction of an oil payment or overriding royalty provided for in the lease. The trial court entered summary judgment in favor of the petitioner on its motion, which decision was reversed and remanded by the Court of Civil Appeals. 262 S.W. 2d 756. A somewhat extended statement of the factual background will be necessary.

To begin with, First National Bank of Fort Worth owned all of the mineral estate in the N.E. quarter and an undivided ½ interest in the N.W. quarter of Section 32, Block 44, of a survey in Ector County. By separate instruments, in 1929 the Bank conveyed to Gilcrease Oil Company an undivided ¾ths interest in the N.E. quarter and an undivided ¼th interest in the N.W.

quarter. On the 19th day of February 1946 the Bank executed an oil and gas lease to Stanolind covering the north $\frac{1}{2}$ of Section 32 containing a lesser estate clause which provided "that if lessor owns an interest in said land less than the entire fee simple estate then the royalties and rentals to be paid lessor shall be reduced proportionately." The Bank therefore owned and conveyed only a lease, on an undivided $\frac{1}{4}$th interest in the N.E. quarter and an undivided $\frac{1}{4}$th interest in the N.W. quarter. In the following month Gilcrease Company executed an oil and gas lease to Stanolind similar to the one executed by the bank except, (1) Gilcrease reserved an oil payment for $160,000, being figured at $500 per acre upon the 320 acres described, having the legal status of an overriding royalty, but reduced proportionately to accord with lessor's actual ownership; and (2) the inclusion of a so-called "entirety clause" reading as follows:

"If the leased premises *are now or shall hereafter be owned in severalty or in separate tracts,* the premises, nevertheless, shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage."

Thereafter Gilcrease Company conveyed all of its interest in the leased property to petitioner Foundation.

Upon the development of the property the N.W. quarter proved to be much more productive of oil than the N.E. quarter. (See plat of Court of Civil Appeals opinion, 262 S.W. 2d 758.) Petitioner owns an undivided $\frac{3}{4}$ths of the mineral interest in the N.E. quarter and only an undivided $\frac{1}{4}$th in the N.W. quarter. The remainder of the N.W. quarter is in undivided interests as follows: Bank $\frac{1}{4}$th; Tidewater Oil Company 2/6ths and Sunray Oil Company 1/6th. Neither Sunray nor Tidewater executed leases, but have an operating agreement with Stanolind.

Petitioner's contention is that it is entitled to receive as royalty $\frac{1}{2}$ of the 1/8th royalty produced from the entire half section and likewise should have applied to its oil payment an undivided 1/16th of 7/8ths of all of the production from the half section by reason of the provisions of the "entirety clause." On the other hand respondent asserts that the "entirety clause" does not bring about that result, but that petitioner is limited to receive $\frac{3}{4}$ths of the 1/8th royalty produced on the N.E. quarter and $\frac{1}{4}$th of the royalty on the N.W. quarter, according to its

actual ownership of the minerals in the two quarter sections respectively, and that the oil payment is to be retired on the same basis. The point has not been heretofore squarely passed upon by the courts of this state.

In the situation where the lessor of an oil and gas lease has granted a part of his estate to another, there is considerable conflict of authority as to whether the grantee would participate pro rata in the royalties accruing from the entire leased tract or would be confined to the royalty from oil produced from his portion only of the premises. Some states, notably Pennsylvania, early adopted the apportionment theory, holding that the grantee would participate in the royalty paid from the production on the entire tract according to the ratio that his interest bore to the premises leased. Wettengell v. Gormley, 160 Pa. 559, 28 Atl. 934; Keystone Gas Co. v. Allen, 227 Ky. 801, 14 S.W. 2d 155. This rule does not obtain in Texas. Japhet v. McRae, Texas Com. App., 276 S.W. 669; Garza v. De Montalvo, 147 Texas 525, 217 S.W. 2d 988. Nor is it the majority rule. (See cases cited in the two foregoing decisions.) The Texas view of the law is stated by the Court in the Japhet case to be:

"Where the lessor of land for oil and gas, subsequently to the execution of the lease, but prior to the development of the land and the production of oil or gas under the lease, sells a portion or portions of the land to others, and oil and gas are thereafter produced under the lease from some portion of the leased premises, the royalties therefrom belong to the owner of the particular tract upon which the well is located, and the owner or owners of other portions of the leased premises have no interest therein."

The obvious difficulties and hardships encountered under the Texas and the majority rule have brought into common use what is known as the "entirety clause." Galt v. Metscher, 103 Okla. 271, 229 Pac. 522. This provision has been upheld in many jurisdictions and its validity is not here under attack, merely its application. Thus it is conceded that, were we concerned with the subsequent assignment of a tract of a certain specified acreage out of the whole amount leased, the provisions of the clause would be applicable. The difficulty here arises by reason of the undivided ownership of the petitioner in the two quarter sections, which interests are not the same and which were owned at the time of the execution of the lease just as they are now, the only change in ownership being that Gilcrease Company has conveyed all of its interest in both quarter sections to the Foundation. The key to the problem at least partially turns on the

meaning and interpretation of the phrase "owned in severalty or in separate tracts."

In Gypsy Oil Company v. Schonwald, 107 Oklahoma, 253, 231 Pac. 864, 868, the court had before it such a provision which, however, did not include the words "are now." In that case the lease covered 160 acres. The lessor thereafter conveyed an undivided ¼th interest in the minerals in the west half from which more oil was produced than from the east half. The court denied grantee's claim to an undivided ¼th interest in the more productive west half, holding that under the provisions of the "entirety clause" he was restricted rather to his pro rata part of the production from the whole tract. The court reasoned as follows:

"* * * What he (lessor) did in fact was in the nature of a covenant which burdened his remainder to the extent that one purchasing subsequent to said lease contract, and subject to it, acquired an interest in the royalty on the whole acreage, prorated as the fraction thereof purchased bore to the entire tract. * * *."

The same rule was followed in Eason v. Rosamond, 173 Oklahoma 10, 46 Pac. 2d 471 and the same result reached.

Again in Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 Pac. 2d 885 the owner of three non-contiguous tracts of land totaling 640 acres, executed one lease on all three tracts, thereafter granting to another an undivided ¼th interest in the minerals in one of the tracts (320 acres). The court likewise held the provisions of the "entirety clause" effective and that the grantee was entitled not to ¼th of the 1/8th royalty from the 320-acre tract but to the proportionate part of the royalty that his interest bore to the entire 640 acres.

The effect of this holding is said to be in Summers Oil and Gas, Vol. 3, Sec. 612, p. 545:

"* * * But construing the lease and the deeds together, the court held, in effect that the royalty deeds conveyed to the royalty purchasers a separate estate within the meaning of the lease provision, and that each royalty purchaser acquired a proportional royalty interest in the lands covered by the lease, rather than a fractional interest in the royalties in the tract of land described in his deed. * * *."

The construction, which Stanolind appears to give to the phrase "owned in severalty or in separate tracts," is, that there is an ownership in severalty or in separate tracts only if either at the time of the lease or afterward the entire mineral interest in a portion of the leased premises is wholly owned by one or more persons in undivided interests, none of whom own mineral interests either wholly or in undivided interests in any other portion of the lease. This construction does not appear to accord either with the circumstances which gave rise to the "entirety clause," or the difficulties and hardships which it was designed to prevent, nor does it appear to be borne out by the decisions.

In the Schonwald and Schrader cases, supra, the conveyances by the lessor were determined to be owned "in severalty or in separate tracts" notwithstanding the fact that in each there was conveyed an undivided interest in a part of the whole, and necessarily so, otherwise the "entirety clause" would have had no application.

The word "severalty" as used in the expression "tenants in severalty" means for the sole, separate and exclusive dominion of the tenants. 39 Words & Phrases, Permanent Edition, p. 93.

"An estate which is held by the tenant in his own right only, without any other being joined or connected with him in point of interest during the continuance of his estate" is an estate in severalty.| Bouvier's Law Dictionary, 3rd Ed., Vol. 2, p. 3055.
"A state of separation. An estate in severalty is one that is held by a person in his own right only, without any other person being joined or connected with him, in point of interest, during his estate therein." Black's Law Dictionary, 2d Ed. p. 1080.

But, however the term "in severalty" may be applied in this connection, we think that in purview of the "entirety clause" under the facts here before us the ownership of petitioner is in "separate tracts," and the words "are now" must be given the effect of making the clause applicable at the time of the execution of the lease. We have been cited no authority to the effect that ownership in different undivided interests in segregated portions of the leased premises does not qualify as an ownership "in separate tracts." In fact Stanolind is here seeking to treat the ownership as being "in separate tracts" in contending that royalty must be paid not in proportion that the ownership by the Foundation bears to the entire leased premises, but only from oil separately produced on each of the two quarter sections.

Respondent cites the following provision of the lease:

"The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns of the parties hereto, but no change or division in ownership of the land, rentals, or royalties, however accomplished shall operate to enlarge the obligations or diminish the rights of lessee."

It asserts that this provision would be completely disregarded if petitioner's contention is sustained, citing Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785.

In the Calcasieu case the lease was held to be a joint lease and the "entirety clause" was applied. However, we think the quoted provision means exactly what it says, that is; whatever obligations are imposed by the terms of the lease the same cannot be increased, altered or modified by any subsequent change or ownership. The extent of the obligations imposed by the lease upon the lessee is the very question here to be determined and the quoted provision sheds no light on that problem, nor indeed does it have any bearing.

On April 2, 1947, a written agreement was executed by petitioner Foundation, the Bank, Tidewater and Sunray, reciting that the four parties are the owners of all the oil, gas and other minerals that might be produced from all of the N.W. quarter of Section 32, and whereas some question had arisen as to the exact interest owned by each, they set forth the ownership as follows: the Bank and the Foundation each 1/4th; Tidewater 1/3rd and Sunray 1/6th. Incidentally this recital of ownership does not vary in any respect from that described in the original leases. Respondent contends that this agreement, subsequently made, forecloses the matter and squarely refutes petitioner's claim to be entitled to any royalties other than that produced from the respective tracts or interests therein owned by the petitioner. In other words, that the royalty must be paid exactly according to the ownership of the minerals. This contention must be overruled. In the recent case of Benge v. Scharbauer, 152 Texas 447, 259 S.W. 2d 166, decided by this Court, it is held that while normally royalty is paid in exact proportion to the ownership, there is no basis for saying that the parties cannot contract for a different result. The agreement as we see it does nothing more than to reiterate and affirm the ownership of the minerals by the respective parties and in no way seeks to alter or vary the terms of the leases theretofore given.

Respondent maintains that the "entirety clause" is always included for the benefit of the lessee and is intended to relieve the lessee of additional burdens that might be occasioned by virtue of there being a separate ownership and separate tracts so as to allow the lessee to develop the premises as one entire lease and was never intended to impose any additional burden by increasing the royalty over and above that contained in the royalty provision. Generally speaking we agree. It is to be borne in mind, however, that the lease from Gilcrease to Stanolind was executed prior to the development of the properties and apparently at a time when it was not known which quarter section, if either, would be more productive. If the N.E. quarter had produced more oil the situation would have been reversed, and petitioner would have received less royalty under the provisions of the "entirety clause." In fact the right to operate the property as one lease is granted by the clause. So far as petitioner is concerned there is no reason why the two quarter sections could not be operated under one lease and the ownership by Tidewater and Sunray of undivided interests in the N.W. quarter, which entails upon Stanolind the duty of operating the two quarter sections independently, can hardly be said to affect the rights of petitioner. The fact that Stanolind did not obtain leases from Tidewater and Sunray who together owned an undivided half interest in the N.E. quarter, but rather executed operating agreements with these companies, cannot be held to vary the terms of the leases executed by Gilcrease nor does it have any bearing on the meaning and construction of the "entirety clause."

The affidavits filed in the trial court reveal that Gilcrease desired to make separate leases on the two quarter sections, possibly to eliminate the question of interior drainage, but at the insistance of Stanolind agreed to one lease and to the inclusion of the "entirety clause" in the lease. It is possibly of some significance that the lease from the Bank to Stanolind did not contain the "entirety clause" inasmuch as the Bank owning the same interest in each quarter section (an undivided ¼th) would receive the same royalty whether the "entirety clause" had been inserted or not.

We hold, therefore, that at the time the lease was made to Stanolind, Gilcrease did own the premises "in severalty or in separate tracts" notwithstanding that the interest in each quarter section was an undivided interest and that the terms of the "entirety clause" apply. The petitioner is entitled to share the royalty in proportion that the interest owned by it bears to the entire leased premises and naturally the same ruling will obtain

so far as the satisfaction of the overriding royalty or oil payment is concerned. The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Associate Justice Smedley dissenting.

Opinion delivered March 24, 1954.