Dula Dashiell COCKRELL et al., Appellants,

v.

TEXAS GULF SULPHUR COMPANY, Appellee.

No. 12849.

Court of Civil Appeals of Texas.

Galveston.

Oct. 6, 1955.

Rehearing Denied Oct. 27, 1955.

950

Fulbright, Crooker, Freeman, Bates & Jaworski, Leon Jaworski, John M. Jamison, Walter J. Morrison and Uriel E. Dutton, Houston, for appellants.

H. F. Montgomery, H. W. Strickland, James W. Lee, Jesse J. Lee and Williams, Lee & Kennerly, Houston, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by the appellants, seeking an accounting and recovery of a royalty of $.147218 per ton on sulphur produced by appellee on land in Liberty County, Texas, referred to by the litigants as the Sergent 729.7 acre tract. Appellee denied such claim, contending that appellants were entitled to recover six and one-half cents per ton royalty on sulphur produced from the west 400 acres of the tract, there having been no sulphur production from the east 329.7 acres thereof. At the conclusion of a trial before a jury both litigants agreed that there were no issues of fact for the jury. The court thereupon rendered judgment that appellants recover from appellee six and one-half cents per ton royalty on sulphur produced from the west 400 acres of the tract, such judgment being in accord with the appellee's contention.

A detailed statement of the voluminous record title, the legal construction of which is determinative of this litigation, would unduly extend this opinion. It is felt that the following is sufficient for a proper determination of the issues presented.

On July 27, 1925, Ruth Sergent owned in fee simple the 729.7 acres referred to as the Sergent Tract. On that date she, joined by her husband, executed an oil, gas and mineral lease upon the entire tract to Erwin W. Smith. This lease, in so far as it covered the south one-half of the tract, was released, prior to April 12, 1926. On April 12, 1926, Ruth Sergent, joined by her husband, executed an oil, gas and mineral lease upon the south one-half of the tract to A. R. Miller. The lease of April 12, 1926, to A. R. Miller is hereafter referred to as the Miller lease. The lease of July 27, 1925, in so far as it covers the north one-half of the Sergent 729.7 acre tract is hereafter referred to as the Smith lease.

Except as to date and land described, the Smith and Miller leases are identical. Each is in the form commonly referred to as an "unless" lease. Each lease provided for a royalty to the lessor of $\frac{1}{8}$ of the oil produced and saved, $\frac{1}{8}$ of the value of gas produced and saved, fifty cents per long ton on sulphur, and a reasonable royalty on other minerals. Each provided for assignments, in whole or in part, and contained identical apportionment provisions expressed as follows: "in case of any change of ownership of said land, * * * all rentals and royalties accruing hereunder shall be paid to the new owners in proportion to their ownership of the whole of the land hereby leased so that no owner of a segregated part of said land shall be entitled to the whole royalties accruing from developments on said segregated tract, but only to such part of such royalty as the acreage in his tract is to the whole acreage embraced in this lease; this covenant shall be taken and construed as a covenant running with the land and binding on all successors in interest to Lessors herein. * *"

Subsequent to the execution of the Smith and Miller leases, Mrs. Sergent sold and conveyed portions of her minerals and royalties. As a result of such conveyances, she was, on September 28, 1931, the owner of an undivided $\frac{1}{8}$ mineral fee interest in the west 400 acres of the Sergent 729.7 acre tract, and an undivided $\frac{1}{2}$ mineral fee interest in the east 329.7 acres of such tract, together with fractional interests in the base royalties provided for in the Smith and Miller leases corresponding:

to her mineral fee ownership. On September 28, 1931, Mrs. Sergent sold and conveyed in fee to Gulf Production Company all of the 729.7 acre tract of land subject to outstanding leases and conveyances, but reserving to herself enumerated royalties and cash payments on minerals which might be produced. For clarity, a copy of such deed, omitting descriptive portions, is attached as Exhibit A to this opinion. Appellants have by purchase succeeded to all interest in the Sergent 729.7 acre tract which remained in Mrs. Sergent and her husband after the deed of September 28, 1931, to Gulf Production Company.

In December, 1931, Gulf Production Company assigned to appellee all rights and properties conveyed to it by Mrs. Sergent. Subsequent to such acquisition, appellee acquired from the lessees in the Smith and Miller leases, and their assignees, all of the sulphur leasehold estates created by both leases, so that before January 1, 1934, appellee owned in severalty all of fee estate owned by Mrs. Sergent on the date of her deed to Gulf Production Company and all of the sulphur leasehold estate under all leases covering it, all subject to the perpetual royalty interests expressly reserved by Mrs. Sergent in her deed to Gulf Production Company (Exhibit A).

As a result of operations by appellee, production of sulphur in paying quantities has been effected, all of which however has been from the west 400 acres of the Sergent 729.7 acre tract.

It is appellants' theory that by virtue of the apportionment provision of the Smith and Miller leases, which have been hereinabove set forth, they are entitled to be paid a royalty on sulphur produced from the Sergent tract, calculated not upon a basis of 6½ cents on that produced from the

West 400 acres and 25 cents on that produced from the East 329.7 acres, but rather upon an apportioned basis representing the sum of 400/729.7 of 6¼ cents plus 329.-7/729.7 of 25 cents on each ton of sulphur produced from the entire tract. Mathematically appellants compute this apportioned royalty at 14.72180347 cents per ton.[1]

As reflected by the judgment rendered, it is apparent that the trial court held as a matter of law that the apportionment provisions of the Smith and Miller leases were not applicable, and that appellants were entitled to be paid royalty upon sulphur only on a nonapportioned basis. The asserted error of such holding is the basis of appellants' two points of error, Point I being referable to the North ½ of the Sergent Tract (Smith lease) and Point II being referable to the South ½ (Miller lease).

This Court has been furnished able and exhaustive briefs by both litigants which have been of great assistance in reaching what we consider to be a proper disposition of this rather complicated law suit. A large portion of these briefs, as well as the record here presented bear upon the question of whether the Smith and Miller leases had lapsed prior to the sulphur production here in controversy. It is the contention of the appellee that the special limitations upon which the determinable fee estates created by such leases were granted has heretofore occurred, and that the production of sulphur is not subject to any of the provisions of such leases, including of course the apportionment provision. We do not consider it necessary to decide this question, which, if appellee is correct in its contention, would admittedly be determinative of the litigation. Rather it is our opinion that even if it be conceded that the leases mentioned have not terminated and are still in effect, nevertheless the apportionment clauses therein have no applica-

1. Appellants explain their use of 6¼ cents per ton rather than the expressed 6½ cents per ton royalty on sulphur produced from the west 400 acres upon the theory that Mrs. Sergent, having previously con- veyed out all but ⅛ of the base sulphur royalty provided for in the Smith and Miller leases, was limited to a reservation of such ⅛ of 50 cents so long as such leases continued in effect.

tion as between appellee and appellants. If, as we believe, our conclusion is correct, the judgment appealed from properly disposes of the issues raised, and must be affirmed.

Appellants rely primarily upon the case of Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 266 S.W.2d 850, by the Supreme Court of Texas. Neither litigant disputes the proposition that in the absence of an apportionment provision, when transfers are made in specific parts of a leased tract subsequent to the lease, there will be no apportionment of royalties, as decided in Japhet v. McRae, Tex.Com. App., 276 S.W. 669. The validity of apportionment provisions has been upheld, and is not questioned. The only issue in dispute is the applicability of the provision to the fact situation here involved. The Supreme Court, in Gilcrease Foundation v. Stanolind Oil & Gas Co., supra, held that where the lessor acquired an undivided three-fourths mineral interest in the northeast quarter and an undivided one-fourth mineral interest in the northwest quarter of a tract of land by separate conveyances, he owned the premises in severalty or in separate tracts, and the provision of his lease of both tracts to another that if leased premises were owned in severalty or in separate tracts, royalties should be divided among separate owners in the proportion that the acreage owned by each bore to the entire leased acreage, was applicable. We do not consider that case to be factually analogous nor the legal principle to be applicable to the case here presented.

For the purposes of our discussion, we do not believe there exists any doubt that the legal relationship between appellants and appellee is identical with that which previously existed between Ruth Sergent and Gulf Production Company at the time of the former's conveyance to the latter, evidenced by the instrument attached hereto as Exhibit A. That instrument evidences a conveyance, with general warranty, of all of the interest owned by Ruth Sergent in the Sergent 729.7 acre tract. It is established that at the time of such con-

veyance, Ruth Sergent owned, in addition to the surface estate, a ⅛ mineral fee interest in the West 400 acres, and a ½ mineral fee interest in the East 329.7 acres. All of such estates clearly passed by her conveyance to Gulf Production Company and thence to appellee. From her conveyance, Ruth Sergent excepted and reserved to herself, certain specifically described perpetual royalty interests, which she subsequently conveyed to appellants. All that she owned, except only that which she specifically reserved, passed to Gulf Production Company. Only that which she specifically reserved is now owned by appellants, namely, insofar as presently in question, a perpetual royalty of 6½ cents per ton on sulphur produced from the West 400 acres, and 25 cents per ton on sulphur produced from the East 329.7 acres. These specific reservations are clearly expressed, and bear no relationship to the Smith and Miller leases; in fact, do not correspond in duration, and in the case of the West 400 acres, in amount, to the royalty owned by her based on such leases. The recitation in the deed to Gulf Production Company that same is subject to existing leases, was intended to, and does nothing more than, protect the grantor in her general warranty. Appellants, then, do not own segregated tracts, subject to the apportionment clause of the Smith and Miller leases, as was the case in the Gilcrease case, but own only that specific royalty excepted and reserved by Ruth Sergent in her conveyance to Gulf Production Company. It is our view of the law that the parties to the deed of September 28, 1931 (Exhibit A), were free to contract, as between themselves, for a reservation in the grantor of any royalty, in any amount, and upon any terms upon which they might mutually agree. Such appears to us to be the clear holding of the Supreme Court of Texas in Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166.

It seems to this Court that if any other construction is placed on the deed from Ruth Sergent to Gulf Production Company, the ultimate result which logically follows patently destroys the clearly and formally

expressed intent of the parties. Appellee points out that if appellants are correct in their contention that the apportionment provisions of the Smith and Miller leases require that royalties be paid to the owners of segregated tracts in the proportion that such acreage bears to the leased acreage, then it, as the purchaser of all of the fee estate owned by Ruth Sergent, is entitled to royalties in that proportion. This construction would compel the conclusion that the perpetual royalty reservations in the deed are totally ineffectual, and appellants own nothing. On the other hand, it could with equal logic be said that if the conveyance from Ruth Sergent to Gulf Production Company is subject to the apportionment provision of the Smith and Miller leases, it is also subject to all of the provisions and reservations of such leases, and therefore Gulf Production Company acquired only the surface estate. Neither construction is consonant with the clearly expressed intention of the parties to the deed. We feel that the judgment of the trial court effectuates the true intention of the parties, and that judgment is accordingly affirmed.

Affirmed.

### Exhibit A

The State of Texas ⎫ Know All Men By
County of Liberty ⎭ These Presents

That Ruth W. Sergent, joined herein by her husband, Paul O. Sergent, of the County of Bexar, State of Texas, hereinafter called grantor, for and in consideration of the sum of Ten ($10.00) Dollars, and other good and valuable considerations to grantor paid by Gulf Production Company, receipt of which is hereby acknowledged, and subject to the mineral and/or royalty reservations and exceptions hereinafter set out, has granted, sold and conveyed and by these presents does grant, sell and convey unto the said Gulf Production Company, a corporation chartered under the laws of the State of Texas, with its domicile in the City of Houston, State of Texas, hereinafter called grantee, all of that certain 729.7 acre tract of land out of the James McFaddin League in Liberty County, Texas, more particularly described by metes and bounds as follows, to-wit:

(Here 729.7 acres is described)

Subject, however, to the terms and conditions of each and all of the existing oil, gas and mineral leases and mineral and/or royalty conveyances, and grantor hereby expressly reserves and excepts unto herself, her heirs, executors, administrators and assigns:

1. 1/64th of all of the oil produced and saved from the West 400 acres of said above-described premises after first having deducted all oil used for fuel in drilling or operating for oil and/or gas on said West 400 acres or in treating the oil to make same marketable, and 1/16th of all of the oil produced and saved from the East 329.7 acres of the above-described premises after first having deducted all oil used for fuel in drilling and operating for oil and/or gas on said 329.7 acres, or in treating the oil to make the same marketable.

Grantee herein, its successors or assigns, shall have the option to deliver the 1/64th and 1/16th of the oil hereinabove reserved to the credit of grantor, her heirs, executors, administrators or assigns, free of cost, in the tanks, pipe lines or gathering system to which it may connect its wells, or to store said oil or otherwise dispose of it, then to pay to grantor, her heirs, executors, administrators or assigns, the then prevailing posted market price therefor in cash, said payments to be made on or before the 15th of month succeeding that during which it is stored or otherwise disposed of.

2. 1/64th of the net proceeds for which all or any gas produced and marketed from the West 400 acres of said above-described premises is sold; provided, however, that any gas produced on said West 400 acres may be used by grantee herein in the drilling and/or operating for oil and/or gas on said West 400 acres without obligations to pay therefor.

3. 1/16th of the net proceeds for which all or any gas produced and marketed from

the East 329.7 acres of said above-described premises is sold; provided, however, that any gas produced on said East 329.7 acres may be used by grantee herein in the drilling and/or operating for oil and/or gas on said East 329.7 acres without obligation to pay therefor.

4. ¾₄th of the net amount, or at grantee's option ⅟₆₄th of the proceeds from the sale of the net amount of gasoline manufactured from natural and/or casing-head gas produced from the West 400 acres of the above-described premises, and ⅟₁₆th of the net amount or at grantee's option ⅟₁₆th of the proceeds from the sale of the net amount of gasoline manufactured from natural and/or casing-head gas produced from the East 329.7 acres of the above-described premises all deliveries and/or payments to be made monthly.

5. 6½ cents per ton 2,240 pounds on all sulphur produced and marketed from the West 400 acres of said above-described premises.

6. 25 cents per ton of 2,240 pounds on all sulphur produced and marketed from the East 329.7 acres of said above-described premises.

7. On all other mineral or minerals not hereinabove enumerated grantor's proportion of the customary and usual royalty or royalties paid on like mineral or minerals when produced and/or mined and marketed under similar conditions and circumstances.

It is expressly understood and agreed that the reservations and exceptions hereinabove enumerated shall be perpetual and shall apply whether such oil, gas, casing-head gas and/or gasoline, sulphur and/or other mineral or minerals is produced under the existing or any future lease or leases by the lessee or lessees therein or by the grantee herein, its successors and assigns, or otherwise.

Grantee shall never be under any obligation to develop the property herein conveyed for minerals; provided, however, that should there be drilled on any land adjacent to that herein conveyed within 200 feet of any line of the property hereby conveyed, a well producing as much as 100 barrels of oil per day for thirty (30) consecutive days or two or more wells each producing as much as 50 barrels of oil per day for thirty (30) consecutive days, grantee, its successors or assigns, shall with reasonable diligence begin and prosecute the drilling of the necessary offset well or wells on the land hereby conveyed in a faithful effort to find and produce oil in paying quantities to protect the property from drainage.

To Have And To Hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantee, its successors and assigns, forever, and subject to the aforesaid oil, gas and mineral leases and mineral and/or royalty conveyances grantor does hereby bind herself, her heirs, executors, administrators, successors and assigns, to warrant and forever defend, all and singular, the said premises unto the said grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

Dated September 28, 1931.

Ruth W. Sergent
Paul O. Sergent