No. 34,587

C. L. Carlock, *Appellant*, v. Fred D. Krug, Amelia Krug et al., *Appellees*.

(99 P. 2d 858)

March 9, 1940. Opinion filed

*Joe T. Rogers,* of Wichita, for the appellant.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing,*
*G. K. Purves, Jr.,* all of Wichita, *George W. Holland, C. R. Holland, Herbert*
*N. Holland,* all of Russell; *Roland Boynton, A. M. Ebright, Hayes McCoy* and
*R. O. Mason,* all of Bartlesville, Okla., for the appellees.

The opinion of the court was delivered by

Hoch, J.: The plaintiff asserts ownership of an interest in production from an oil well, and asks an accounting. Defendants are the landowners, the lessee who brought in the well and the company which has been buying the oil. All defendants filed demurrers to the petition. From an order sustaining all demurrers the plaintiff appeals.

The principal question presented is whether the plaintiff, who claims under a mineral deed conveying an undivided interest in the oil and gas under the *west* half of the described quarter section, is entitled to an interest in the oil being produced from a well located on the *east* half under a lease which covers the entire quarter section.

The petition alleged that the defendants, Fred D. Krug and Amelia Krug, owners of the described quarter section of land in Russell county, executed an oil and gas lease covering the entire quarter on February 12, 1929, which was duly recorded on March 13, 1929; that through mesne assignments, duly recorded, the defendant Charles D. Yankey became the holder of the lease on December 1, 1938; that on July 31, 1929 (more than four months after the recording of the lease) the Krugs, owners of the land, executed and delivered to C. A. Johnson a mineral deed, conveying for a term of ten years, and so long thereafter as oil or gas might be produced from said land, an undivided one-thirty-second interest in all of the oil and gas "in and under the *west* half" of the described quarter section and that in the deed the Krugs "reserved all rentals or bonus money that might be paid on any present or future lease on said lands"; that the mineral deed provided that "It is understood and agreed that there is no oil or gas lease covering said land at the present time" and that the grantees and their successors in interest should have an undivided one-fourth interest in the one-eighth royalty of oil and gas under any future lease and that the grantors "reserve the sole and absolute right to execute oil and gas leases covering the lands . . . without the necessity or right of the grantee joining in such lease," the intent being simply to convey to the grantee a one-thirty-second interest "carved out of the royalty interest reserved by the grantors under any future lease;"

and that this mineral deed was recorded on August 1, 1929; that by mesne assignments the plaintiff became the holder of the mineral deed on October 28, 1936. Copies of the lease and mineral deed were attached and made a part of the petition.

The petition further alleged that the defendant Yankey drilled a well on the east half of the quarter section—"located at approximately the center of the northwest quarter of the southeast quarter" of the quarter section—about January 4, 1939, secured a commercial producer and that the defendant, the Cities Service Oil Corporation, had purchased the oil produced therefrom. The petition further alleged that the covenants of the lease are indivisible and that—

"The lessors [meaning lessees] or those claiming under them have complied with the conditions and covenants in said lease with reference to exploration and development and cannot be compelled to further develop said premises for the benefit of the plaintiff herein"

and that the Krugs are now asserting that the interest of the plaintiff will expire on the 31st of July, 1939, and the other defendants have refused to recognize the rights of plaintiff and refused to pay him his part of the royalty.

As heretofore noted, the lease covering the quarter section was recorded several months prior to the mineral deed which conveyed an undivided one-thirty-second interest in the oil and gas under the *west* half of the quarter. Appellant does not contend that the mineral deed under which he claims conveyed any interest in the land on which the well is located, but contends that the well, located on the *east* half, has produced oil and gas "from the *west* half" of the quarter in which he has "a one-sixty-fourth undivided interest." His argument is that since the lease covers the entire quarter the owners of the well and of the land on which the well is located are required to account to him for his interest in the oil under the west half. He claims not only under a general theory of law, but under a specific provision of the lease to which reference will later be made.

Some preliminary matters must first be noted. The petition, the mineral deed and the assignments present some inconsistencies, difficult, if not impossible to harmonize, but which require little attention in view of the conclusions hereinafter stated on the main issues. For instance, the mineral deed from the Krugs to Johnson, given July 31, 1929, first conveyed "an undivided one-thirty-second interest in and to *all of the oil and gas in and under*" the west half of

the quarter, while a later recital of the instrument was: "It is understood" that "by this instrument" the grantee "shall have an undivided one-fourth interest in the one-eighth royalty of oil and gas under any future lease on said lands." Ownership of a one-thirty-second interest in the oil *in place*, is not equivalent to a one-thirty-second interest in the oil *produced under a lease*. (3 Summers on Oil and Gas, Per. ed., § 606.) Owners of minerals in ·place are only entitled to their proportionate share of the *royalties* due from any lessee. However, construing the instrument most favorably to appellant, it conveyed to Johnson, the original grantee, a one-thirty-second interest in the oil produced from the land under any subsequent lease. It must be noted, however, that "the land" referred to in the deed cannot refer to any land except the west half, since no reference is made to any interest in the east half. We come now to the assignments through which appellant claims. The assignment of Johnson to Mai on October 28, 1936, purported to convey one-half the interest which Johnson had received under the mineral deed. Under the interpretation heretofore stated this would give Mai a one-eighth interest in the royalty or a one-sixty-fourth interest in the oil produced from the west half. In this assignment it was specifically stated that the land was subject to the oil and gas lease now held by Yankey. When Mai assigned to Carlock, the appellant, on January 19, 1939, it was again recited that the land was under the lease so that whatever rights Johnson, the original grantee, might have had against the landowners for the untrue recital that there was no lease on the land, it would be difficult to see what rights the appellant has in that respect, since he holds under assignment which recites the existence of the lease. However, we are not here presented with any cause of action against the landowners based on misrepresentation in the mineral deed.

Further, it must be noted that we are not presented with any contention that the lessee is not properly developing the lease—that under its terms and the surrounding conditions a well should be put down on the west half of the quarter. On the contrary, the petition states that the "lessors" (evidently meaning lessee) have complied with all conditions of the lease and "cannot be compelled to further develop said premises for the benefit of the plaintiff herein."

It is also well to make clear that appellant is making no claim based solely on drainage from the land in which he holds an interest.

While, in effect, alleging drainage, he is claiming under the lease. It is well settled in Kansas that the owner of the land and those holding under him own all the oil produced from wells located on the land and that owners of adjoining tracts must protect themselves by development of their own land. (*Prewett v. Van Pelt*, 118 Kan. 571, 576, 235 Pac. 1059; *Zinc Co. v. Freeman*, 68 Kan. 691, 696, 75 Pac. 995.) While this so-called "rule of capture" has been quite generally followed (18 R. C. L. 1206-1208; 1 Thornton on Oil and Gas, 4th ed., p. 315) it has in more recent years been much criticized, in the light of present-day knowledge concerning the characteristics and underground movements of oil and gas (see 1 Summers on Oil and Gas, Per. ed., pp. 135-143) and has been subjected to many legislative and judicial limitations and modifications, particularly in connection with so-called proration laws and other conservation measures. Such limitations, however, require no present comment.

We are brought to the main issue. The question is whether in case land on which an oil and gas lease has been given is subsequently divided in ownership—either surface rights or mineral rights—the owners of the separate divisions or parcels have a right to share in any production later had, except the production from their own land. In other words, whether, in the absence of express grant, reservation or devise, they share in the royalty from oil produced on other subdivisions or parcels of the land covered by the lease. On this question we find a conflict of authority. Appellant concedes that under the majority doctrine oil production belongs solely to the owners of the well and of the land on which the well is located. The contrary view is supported by decisions of the courts of Pennsylvania, Kentucky and, perhaps, of California. (*McIntire's Adm'r. v. Bond*, 227 Ky. 607, 13 S. W. 2d 772; *Keystone Gas Co. v. Allen*, 227 Ky. 801, 14 S. W. 2d 155; *Cook v. Cook's Adm'r.*, 261 Ky. 501, 88 S. W. 2d 27; *Wettengel v. Gormley*, 160 Pa. St. 559, 27 Atl. 934; *Wettengel v. Gormley*, 184 Pa. St. 354, 39 Atl. 934; *Standard Oil Co. v. J. P. Mills Organization*, 3 Cal. 2d 128, 43 P. 2d 797.)

The California case, *Standard Oil Co. v. J. P. Mills Organization*, supra, quotes with approval statements made in the dissenting opinion of Justice Poffenbarger in *Musgrave v. Musgrave*, 86 W. Va. 119, 103 S. W. 302, to the effect that royalty is not merely a return for the right to take oil from the land where the well is located, but that it also maintains the lessee's right to carry his operations to other parts of the tract, precludes operation thereon by anyone

except those claiming under the lease, and that apportionment of the royalty should be made to all owners of any part of the land included in the lease. That minority view, however, has not been adopted in this state. This court has held that "royalty" refers not to "oil in place" but to the "share in the oil and gas produced and paid as compensation for the right to drill and produce." (*Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 151, 40 P. 2d 463.)

Also cited in support of the minority view are the Texas cases of *Gillette v. Mitchell,* 214 S. W. 619; *McRae v. Japhet,* 269 S. W. 829; *Stephenson v. Glass* 276 S. W. 1110, and the West Virginia case of *Campbell v. Lynch,* 81 W. Va. 374, 94 S. E. 739; but the earlier Texas cases, *supra,* were overruled by the supreme court of Texas in the case of *Japhet v. McRae,* 276 S. W. 669, followed by *Stephenson v. Glass,* 115 Tex. 192, 279 S. W. 260; and the earlier West Virginia case, *supra,* was overruled in *Gas Co. v. Ankrom,* 83 W. Va. 81, 97 S. E. 593, and *Musgrave v. Musgrave,* supra.

In addition to Texas and West Virginia, other states holding that the owner of the subdivided tract is entitled to all of the royalties resulting from production on his parcel of land are Arkansas, Indiana, Ohio and Oklahoma. (*Osborn v. Arkansas Ter. Oil & Gas Co.,* 103 Ark. 175, 180, 181, 146 S. W. 122; *Fairbanks v. Warrum,* 56 Ind. App. 337, 347, 104 N. E. 983; *Natural Gas Co. v. Ullery,* 68 Ohio St. 259, 271, 67 N. E. 494; *Kimbley v. Luckey,* 72 Okla. 217, 179 P. 2d 928; *Pierce Oil Corporation v. Schact,* 75 Okla. 101, 181 Pac. 731.) This question is extensively discussed in 3 Summers on Oil and Gas, Per. ed., pp. 517-533.

While admitting that the majority doctrine, as heretofore stated, would be fatal to his contention, appellant argues that "this is not the law now." He contends that it has all been changed—"immediately after the decision of *Galt v. Metscher,* 103 Okla. 271, 229 Pac. 522"—by the inclusion in oil leases for the first time of the following provision:

"If said lessor owns a less interest in the above-described lands than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee."

Appellant relies heavily upon the Oklahoma case of *Gypsy Oil Co. v. Schonwald,* 107 Okla. 253, 231 Pac. 864, in which it was held that one purchasing part of the land covered by a lease thereby ac-

quired an interest in the royalty on the whole acreage, prorated in the proportion that his parcel bore to the entire tract. The fatal weakness of the argument is, however, that the provision or covenant involved in the Gypsy Oil Co. case, *supra*, was not at all the same provision which appears in the instant lease. The determining clause in the Gypsy Oil Co. case, as well as in the case of *Schrader v. Gypsy Oil Co.*, 38 N. M. 124, 28 P. 2d 885, and *Eason v. Rosamond*, 173 Okla. 10, 46 P. 2d 461, read, as follows:

"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage." (*Eason v. Rosamond*, supra, syl. ¶ 1.)

Such a provision has been called an "entirety clause." It is being frequently inserted in present-day leases to avoid the hardship that may sometimes arise under the majority rule heretofore stated and to provide, when the lease is made, that the lessee shall develop the original tract as a unit and apportion royalties among the owners of separate tracts in case the original tract is subdivided. This question of division of royalties between transferees of portions of land subject to the lease *where the lease contains an express provision for apportionment* is fully discussed in 3 Summers on Oil and Gas, Per. ed., pp. 533-535, and many cases are there cited. The provision in the instant case relied upon is not such an "entirety clause." It has long been a usual provision commonly carried in oil and gas leases, and its obvious purpose is merely to provide that if it develops subsequent to the lease, that the lessor did not in fact have full title to the tract, he should receive royalties only in the proportion which his interest bears to the full title. The provision has no reference to any future subdividing of the original tract. This is clear not only from the wording itself, but is further indicated by the fact that leases which now include the new "entirety clause" ordinarily still retain the old provision upon which appellant relies.

It follows from the conclusions already stated that the demurrers to plaintiff's petition were properly sustained.

The judgment is affirmed.