ISKIAN v. CONSOLIDATED GAS
UTILITIES CORP. et al.

No. 35277. Nov. 12, 1952.

Rehearing Denied Jan. 6, 1953.

*251 P. 2d 1073.*

Robinson, Shipp, Robertson & Barnes, by T. Murray Robinson, Oklahoma City, for plaintiff in error.

Drennan & Eddy, Medford, George B. Collins and C. L. Williams, Wichita, Kan., Tom Biggers, Ponca City, Conrad C. Mount, Oklahoma City, and Dan Mitchell, Enid, for defendants in error.

DAVISON, J. By this action, Bonnie W. Iskian, as plaintiff, seeks to recover 1/8 of the royalties payable for production of oil and gas from certain lands in Grant county, Oklahoma, in which the defendants contend she owns only 1/16 royalty interest. The parties will be referred to as they appeared in the trial court.

The defendants Rufus Forsyth and Alice M. Forsyth, his wife, were the owners in fee of a quarter section (160 acres) of land in said county when, in 1924, they executed an oil and gas lease thereon, containing the following provision, which is commonly referred to as an "entirety" clause, to wit:

"If the leased premises shall hereafter be owned in severalty or in separate tracts the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise or otherwise or to furnish separate measuring or receiving tanks."

The Marland Oil Company was the owner of said lease on July 24, 1928, when said lessors, the defendants Forsyth, executed the following conveyance:

"Conveyance of Oil and Gas Royalty

"This indenture made and entered into this 24th day of July 1928, by and between Rufus Forsyth and Alice M. Forsyth his wife as parties of the first part and Dickey Drilling Co., a corporation of Ponca City, Oklahoma, party of the second part:

"Witnesseth: that whereas parties of the first part are the owner of the following described real property situated in the County of Grant and State of Oklahoma, to-wit:

"The Northwest (NW1/4) of Section Two (2) Township Twenty-seven (27) Range Three West (3W) Grant County, State of Oklahoma.

"And whereas, parties of the first part desire to sell, transfer and convey to the party of the second part, the interest and share hereinafter specified of the oil and gas in, under and to be produced from the above described premises, and party of the second part desires to purchase the same.

"Now, therefore, for and in consideration of the sum of One Dollar and other valuable consideration paid by the party of the second part to parties of the first part, the receipt of which is hereby acknowledged, said parties of the first part, for themselves, their heirs, and assigns do hereby sell, transfer and convey to the party of the second part, his heirs, and assigns, an equal undivided one fourth of one eighth interest and share in and to all of the oil and gas lying in and under and to be produced from the following described tract of land to-wit:

"On the East *Half* of the Northwest Quarter (East ½ N. W. ¼) of Section two (2) Township Twenty-seven (27) Range Three West (3W)

"To have and to hold the same unto party of the second part, his heirs, successors, administrators and assigns. The rights herein granted shall be only for the period of lease now held by Marland from date of this conveyance, at the end of which time all rights herein under shall revert to the parties of the first part unless at that time oil and gas is produced and marketed in commercial quantities from said prem-

ises in which event the rights conveyed under this instrument shall continue to said party of the second part, until such time as production of both oil and gas in commercial quantities shall cease at which time all right hereunder shall cease and terminate as to party of the second part, and revert to parties of the first part. And this conveyance and transfer is a covenant running with the title to the land and is binding upon the first parties, their heirs, administrators, representatives, successors and assigns, and the first parties for themselves, their heirs, successors and assigns herewith represent and covenant with the said party of the second part that at the time of this conveyance they were the true and lawful owners of all the rights, title and interest in and to the interest herein conveyed and had good right and authority to sell and convey the same and that the right title and interest herein conveyed are free and clear from all liens and incumbrances whatsoever and in the event of the failure or neglect to develop the above described tract for oil and gas at any time then the second party herein his agents, heirs, successors and assigns are herewith granted the right of engress and egress in and to and upon said premises for the purpose of developing the same for oil and gas and they are herewith granted the right and privilege to do all things necessary and incident thereto and to charge the production produced from said tract with interest proportionate expenses thereto.

"In Witness Whereof we have hereunto set our hands and seal the day and year first above written.

"Rufus Forsyth,
"Alice M. Forsyth."

Thereafter, a one-half interest in the estate owned by the above-named Dickey Drilling Company was conveyed to one G. H. Wieland who, in turn, on February 12, 1929, conveyed the same to his then wife, Bonnie B. Wieland, now Bonnie W. Iskian, the plaintiff herein. At the time this suit was filed, the defendants Consolidated Gas Utilities Corporation and Continental Oil Company were the owners and operators of the above-described leasehold

estate and the defendant Consolidated Gas Utilities Corporation was the purchaser of the gas produced from the premises. The defendant Globe Oil & Refining Company was the purchaser of the oil produced from the premises prior to and until April, 1948. Stanley Forsyth, as administrator, has been substituted for the defendant Rufus Forsyth, now deceased.

In 1929, two wells, classified as gas wells, were drilled on the premises and their location being on the east half of the quarter section or that part which was described in and covered by the above-quoted "conveyance of oil and gas royalty," under which the plaintiff claims, gives rise to this litigation. From the time of the completion of said wells until about July, 1943, plaintiff was paid royalty on the basis of 1/64 of the production (1/8 of 1/8), but from that latter date the royalty payments were withheld and impounded because of plaintiff's refusal to sign a division order under which she would receive 1/128 of the production (1/16 of 1/8), this being the amount to which the defendants contend she was entitled. Judgment of the trial court was for defendants, fixing plaintiff's royalty interest at 1/16 of the 1/8 royalty or 1/128 of the gross production. From such judgment, plaintiff has duly perfected this appeal.

There is but one proposition for determination, namely: Was plaintiff, under the provisions of the "Conveyance of Oil and Gas Royalty," quoted in full above, when interpreted in the light of the above-quoted "entirety clause" contained in the oil and gas lease, entitled to receive 1/8 of the royalty (1/64 of gross production) or was she entitled to receive 1/16 of such royalty (1/128 of gross production)?

Plaintiff's contention is that all of the production on the quarter section of land was from the east half thereof; that she owned a 1/8 interest in the oil and gas underlying said east half; that

she was therefore entitled to 1/8 of the royalty or 1/64 of the gross production.

Defendants contend that, under the provisions of the entirety clause of the lease, the royalty from any or all wells on the entire quarter section had to be divided pro rata as was the acreage; that, regardless of the location of the wells on the quarter section, 1/2 of the royalty was payable to the owners of the west half thereof and 1/2 of the royalty to the owners of the east half thereof; that plaintiff, owning a 1/8 interest in the east half of the quarter section, was entitled only to a .1/16 (1/8 of 1/2) of the royalty or 1/128 of the gross production. To support their position, defendants rely upon the decisions of this court in the cases of Gypsy Oil Co. v. Schonwald, 107 Okla. 253, 231 P. 864; Eason v. Rosamond, 173 Okla. 10, 46 P. 2d 471, and the Illinois case of Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E. 2d 760, and other cases to the same effect, but there is a marked difference between the factual situations in those cases and the case at bar. These distinctions are hereinafter discussed.

In the interpretation of any conveyance, "the question is one of intention of the parties, especially of the grantors." Cridland v. Franklin, 191 Okla. 650, 132 P. 2d 323. The rule to be followed was stated in the case of Sullivan v. Gray, 182 Okla. 487, 78 P. 2d 688, as follows:

" * * * The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with each other and that construction adopted which, if possible, gives effect to every part of the contract. Prowant v. Sealy (1919) 77 Okla. 244, 187 P. 235; Hammett Oil Co. v. Gypsy Oil Co. (1921) 95 Okla. 235, 218 P. 501, 34 A.L.R. 275; Continental Supply Co. v. Levy (1926) 121 Okla. 132, 247 P. 967."

In applying the last-quoted rule to the situation in the case of Bascom v. Maxey, 195 Okla. 259, 157 P. 2d 158, this court held that the lessor in an oil

and gas lease containing an entirety clause, conveyed all his interest in production from a subsequently drilled gas well by conveying the fee to a portion of the leased premises whereon the well was later located and drilled, if such was the manifest intention of the grantor as determined by "construing the deed in its entirety without undue reference to any part." The facts in that case were in many respects, similar to those in the case at bar. The owner of a quarter section of land leased the same for oil and gas. By the terms of said lease, the property was to be developed and operated as an entirety or unit. Thereafter, he sold the south half thereof (the attempted reservation of the underlying oil and gas was held to be void). Subsequently, a producing gas well was drilled on the said south half of said quarter section. Several years later, the original lessor-grantor brought suit to recover royalties due him from such production and for cancellation of the lease because of nonpayment. One of his contentions was that, granting the reservation of minerals to be void, he was still entitled to one-half of the royalties. His argument was that, because of the entirety clause in the lease on the quarter section, the royalty from production from any well, wherever located thereon, was payable pro rata to the owners of the several tracts, in the proportion each owner's acreage bore to the entire acreage covered by the lease; that he still owned one-half of the quarter section (the north half) and was therefore entitled to one-half of the royalty, regardless of the location of the well. This court held he was not entitled to any royalty because his intention, as expressed in the deed, was to convey all his interest in all production from all wells drilled on the said south half of the quarter section. The position and argument of the plaintiff in that case was the same as that of the defendants in the case now before us. It is also the same contention as was sustained on appeal in the above-cited cases of Gypsy Oil Co. v. Schonwald, Eason v. Rosamond, and Harley v. Magnolia Petroleum Company, upon which defendants rely.

The line of distinction which lies between the last above-cited cases and the instant case, as well as the Bascom v. Maxey case, is determined by the intent of the grantors as found by an interpretation of each of the conveyances. In all of the cases relied upon, the conveyances were of a part interest in the minerals underlying a described tract of land forever, subject to the terms and provisions of the leases then in effect. In other words, after the expiration of the current leases, the grantees were forever the unrestricted owners of a definite undivided interest in the minerals underlying a definite parcel of land and could deal with them as they saw fit. The description in the conveyance of that definite parcel of land then had a very important meaning and application.

In the instant case, the conveyance was "only for the period of lease now held by Marland," and amounted to no more than an assignment of a part of the royalty payable under the terms of said lease. When that lease terminated, any interest in the minerals which had been conveyed to the Dickey Drilling Company was at an end. Therefore, the description of a definite parcel of land, under which the minerals lay that were conveyed to Dickey, served no purpose unless applicable during the period of the Marland lease. Defendants would interpret the conveyance to be of "an equal undivided one-fourth of one-eighth interest" in one-half of the oil produced from the quarter section. Had that been the intention of the parties, it would have been very simple to describe it as "one-eighth of one-eighth," since the description of the east half of the quarter section could have no application.

The manifest intention of the parties as determined by the conveyance con-

strued "in its entirety without undue reference to any part" (Bascom v. Maxey, supra), was that Dickey became the owner of one-fourth of the one-eighth royalty payable under the terms of the Marland lease for production from all wells drilled on the east half of the quarter section and from those only. Plaintiff became the owner of an undivided one-half of that interest or a one-eighth of one-eighth.

This conclusion is further sustained by being in harmony with the interpretation placed on the conveyances by the parties themselves for many years. On March 18, 1929, December 25, 1931, and May 1, 1933, gas division orders were signed by all the parties, authorizing the purchaser of the gas production to pro rate 1/64 thereof to plaintiff. Such proration was observed in all payments made prior to and until about the year 1943. Subsequent royalty payments were impounded.

In Gypsy Oil Company v. Schonwald et al., supra, there was production from other portions of the lease, than that portion under which the royalty interest was granted, and, in Eason v. Rosamond, supra, the matter of production from other portions of the lease was taken care of by stipulation. Thus, these cases are factually distinguishable from the instant case. In the instant case, the interests of the lessees are not involved and nothing in this opinion is intended to apply to or limit their rights under the provisions of the entirety clause. In the event production is obtained from other portions of the lease, a different rule would apply.

The judgment of the trial court is reversed and the cause remanded, with directions to proceed in a manner not inconsistent with the views herein expressed.

WELCH, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. HALLEY, V.C.J., and CORN and GIBSON, JJ., dissent.