ROBERT R. RAUNER, APPELLANT, V. M. CARL JONES ET AL.,
APPELLEES.

67 N. W. 2d 347

Filed November 26, 1954. No. 33610.

L. M. Clinton, for appellant.

Martin, Davis & Mattoon, Robert M. Evans, and J. W. Gee, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Cheyenne County. It involves the construction and legal effect of certain provisions contained in an oil and gas lease and a mineral deed.

Robert R. Rauner, appellant here and plaintiff below, was the owner of two noncontiguous tracts of land in Cheyenne County consisting of 400 acres. These two tracts are described as the southwest quarter of Section 30, Township 15 North, Range 48 West, and the east half of the southwest quarter and the southeast quarter of Section 10, Township 15 North, Range 49 West. On May 14, 1948, appellant entered into what is admitted to be a valid and existing oil and gas lease on these premises. It was entered into with The Ohio Oil Company, an Ohio corporation. Therein the lessee, among other things, agreed to pay the lessor one-eighth of all the oil and gas produced and sold from the leased premises at the prevailing market price therefor at the wells. There was contained in the lease the following provision, which has become known and referred to in the oil industry as an entirety clause: "(7) If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all rents and royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to the separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by conveyance, devise, or otherwise, or to furnish separate measuring or receiving tanks. It is agreed that in the event this lease shall be assigned as to a part or parts of the above described lands and default shall be made in the payment of the proportionate part of the rent due upon any such part, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said land upon which due payments of said rentals shall be made."

On August 10, 1949, appellant, by mineral deed, did "grant, bargain, sell, convey, transfer, assign and de-

liver unto M. Carl Jones and H. E. Linam, residents of Shreveport, Louisiana, hereinafter called Grantee (whether one or more) an undivided One-Fourth ($\frac{1}{4}$) interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the following described lands situated in Cheyenne County, State of Nebraska, to-wit: The Southeast Quarter (SE$\frac{1}{4}$) and the East Half of the Southwest Quarter (E$\frac{1}{2}$SW$\frac{1}{4}$) of Section Ten (10) Twonship (Township) Fifteen (15) North, Range Forty-nine (49) West of the 6th P. M. * * * containing 240 acres, more or less, * * *."

The deed went on to state: "(It is the intention of the Grantors to sell and the Grantees to purchase Sixty (60) mineral acres)."

To complete the conveyance of the 60 mineral acres, in view of the lease already referred to, the mineral deed contained the following: "This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that said Grantee shall have, receive, and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, precisely as if the Grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and Grantee one of the lessors therein."

On September 20, 1949, M. Carl Jones and H. E. Linam sold and conveyed to Carl W. Jones and James M. Jones an undivided one-third of the interest they had obtained from the appellant.

On or about July 30, 1952, The Ohio Oil Company brought in on the southwest quarter of Section 30 what is currently a producing oil well. It subsequently, about July 6, 1953, brought in on this same tract a second pro-

ducing oil well. No wells have been brought in on the other tract of 240 acres in Section 10.

Appellant, on October 22, 1953, brought this action to have the mineral deed to M. Carl Jones and H. E. Linam so construed that the grantees therein named obtained thereby a one-fourth interest in and to any and all royalties accruing from oil or gas produced from the 240 acres and none from that produced from the 160 acres. Trial was had. The district court held that the mineral deed to M. Carl Jones and H. E. Linam conveyed a three-twentieths interest in and to all royalties accruing under the terms of the gas and oil lease with The Ohio Oil Company by reason of any oil and gas produced on the 400 acres. From the overruling of his motion for new trial, Rauner perfected this appeal.

The Ohio Oil Company filed an answer stating it was in doubt as to who was entitled to receive the three-twentieths of the royalty, which it had been withholding since June 1, 1953, but which it was ready and willing to pay to whomever the court found entitled thereto. It thus became, in fact, a stakeholder.

The parties stipulated the only question involved is the proper division of oil and gas royalties that have and will accrue under the terms of the lease. Appellant contends that defendants M. Carl Jones and H. E. Linam, and their grantees, became entitled to share only in royalties accruing from production of oil or gas on the 240 acres in Section 10, whereas defendants M. Carl Jones and H. E. Linam, and their grantees, all of whom are appellees, contend they are entitled to share from that produced on the entire 400 acres.

The mineral deed of August 10, 1949, was clearly intended to convey all rights of the grantors in and to 60 mineral acres in the 240 acres of land therein described. In order to determine what effect that will have on the grantees' rights to royalties accruing under and by reason of the gas and oil lease of appellant with The Ohio Oil Company it is necessary to look at the

history relating to entirety clauses in gas and oil leases and the reason for their being placed therein.

The majority of the courts hold, in the absence of an express agreement or controlling valid governmental regulations, that the owners of mineral interests under a portion of land subject to an oil and gas lease are entitled to all of the rents and royalties accruing from the production of oil or gas from that land even though the lease may cover other tracts.

As stated in Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S. W. 122: "Because the lease covered the entire tract, this did not make the lease an entirety as to the several parts of the land that were thereafter purchased and acquired by different owners. Each purchaser from the lessor obtained and owned the gas in that part of the land bought by him, and was entitled to the rentals arising therefrom and none other. The respective parties have no special equities in these rentals springing from the fact that the lease covered the entire tract."

And in Northwestern Ohio Natural Gas Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494: "It, therefore, irresistibly follows that the oil or gas taken from a well on a particular tract of land belongs to the owner of that tract even though the contract under which the well was drilled included other tracts of land."

And in Central Pipe Line Co. v. Hutson, 401 Ill. 447, 82 N. E. 2d 624: "* * * in the absence of agreement to the contrary, the lessor owner of the tract of land conveys the oil or gas thereunder when he conveys his land. His grantee succeeds to the title to all, i.e., land, oil and gas."

See, also, Japhet v. McRae (Tex. Comm. App.), 276 S. W. 669; Carlock v. Krug, 151 Kan. 407, 99 P. 2d 858; Boren v. Burgess, 97 F. Supp. 1019; Republic Natural Gas Co. v. Baker, 197 F. 2d 647.

The resulting hardship which often arose from the application of this majority rule prompted an entirety

clause to be put in many gas and oil leases. By the terms of an entirety clause, such as here, the parties thereto agree that in the event the mineral interests under the leased premises shall become separately owned the royalties shall nevertheless be treated as an entirety, the separate owners participating pro rata. See, Republic Natural Gas Co. v. Baker, *supra;* Carlock v. Krug, *supra*.

As stated in Boren v. Burgess, *supra:* "To eliminate controversies and alleviate hardships resulting from situations similar to the instant case, parties to modern leases have inserted in most instances what has been termed the 'entirety clause'. This clause specifically provides for the apportionment of all royalty if the leased premises are thereafter owned in severalty or in separate tracts. Oklahoma courts have given this clause a reasonable interpretation and allowed pro rata sharing of the royalty among the owners of the subdivision of a tract under a single lease regardless of the location of the producing wells. Eason v. Rosamond, 173 Okl. 10, 46 P. 2d 471; Gypsey (Gypsy) Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864."

The question then arises, what is the legal effect of this clause upon the lessor? While the courts are not entirely in accord the majority hold this voluntary provision in a lease has the effect of placing a restriction upon the power of the lessor to alienate his mineral interests therein contrary thereto as long as the lease containing such clause remains in force and effect. We think this principle to be sound.

As stated in Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864: "* * * Clark in executing the lease placed a restriction upon his power to alienate any part of his estate in the land covered by the lease, with a right on the part of the subsequent grantee of such fractional interest to participate in the royalty, except in accordance with the said lease provision itself."

The court therein went on to say: "He had the right to limit his sale thereof or manner of the use thereof

as to its entirety or any acreage within the whole, or any estate arising from any part thereof. What he did, in fact, was in the nature of a covenant which burden his remainder to the extent that one purchasing subsequent to said lease contract and subject to it acquired an interest in the royalty on the whole acreage, prorated as the fraction thereof purchased bore to the entire tract. We think it is well recognized that the whole estate in the mineral may be, as to sale thereof, separated from the other estates of the fee. When so done, interests therein are subject to contract. The clause here in question was, as to subsequent agreements of sale, tantamount to a severance of the owner's estate in the oil and gas mineral from the estate in the land itself, and covenanting that owners of a fraction of the whole estate in either should share in the oil and gas as per the pro rata clause thereof. If the purchaser succeeds by contract to the west 80 or a fraction thereof as to fee or mineral right, he takes same burdened with that agreement in the lease, and as the contract affects the mineral rights, it goes to all underneath the acreage covered by the lease."

In Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N. E. 2d 760, 137 A. L. R. 900, which is a case in which identical language was used in the deed, the court said: "It is claimed by appellees, however, that the intention of the parties was to convey the undivided interest specified, in all the gas and oil that came from the 20-acre tract, without regard to the pro rata provision of the lease."

The court then goes on to say: "The lease, however, to which the deeds were made subject, requires the lessee to make distribution of one-eighth of the oil produced from any and all wells drilled on the 90 acres described in the lease, in proportion that the acreage owned by each separate owner bears to the entire leased acreage regardless of the location of the wells. It is apparent that notwithstanding the deeds be so reformed as to

show a transfer by the appellant of all her interest in any oil which might be produced in the 20-acre tract, the lessee, unless the terms of the lease were altered, would still be bound to make distribution in accordance with the terms of the lease, which, appellees have stipulated, is a valid and subsisting lease."

See, also, Schrader v. Gypsy Oil Co., 38 N. M. 124, 28 P. 2d 885; Eason v. Rosamond, 173 Okl. 10, 46 P. 2d 471; Carter Oil Co. v. Crude Oil Co., 201 F. 2d 547; Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co. (Tex.), 266 S. W. 2d 850. It will be observed that in both Schrader v. Gypsy Oil Co., *supra,* and Carter Oil Co. v. Crude Oil Co., *supra,* several noncontiguous tracts were involved. The fact that the tracts are noncontiguous and in separate geological structures would have no bearing upon the legal effect of the language used in the lease.

We recognize there is authority to the contrary. See, Coyne v. Simrall Corp., 140 F. 2d 574; Shell Petroleum Corp. v. Carter, 187 La. 382, 175 So. 1; Iskian v. Consolidated Gas Utilities Corp., 207 Okl. 615, 251 P. 2d 1073. It should, however, be stated that the courts in Shell Petroleum Corp. v. Carter, *supra,* and Iskian v. Consolidated Gas Utilities Corp., *supra,* were, as set forth in the opinions, dealing only with assignments of royalties and not with mineral deeds.

Many other questions are raised and discussed in the briefs. However, in view of our holding herein, they become immaterial; consequently we will not consider them. We find the decree rendered by the trial court to be correct and that it should be affirmed. We affirm the decree of the trial court.

AFFIRMED.