ALLEN W. KRONE ET AL., APPELLANTS, V. PATRICK J. LACY ET AL., APPELLEES.

97 N. W. 2d 528

Filed June 26, 1959. No. 34577.

*Wright, Simmons & Harris,* for appellants.

*Van Steenberg, Myers & Burke* and *Fritzler & Brower,* for appellees.

*Russell Moore* and *Morris, Laing, Evans & Brock,* amici curiae.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Allen W. Krone and his father Francis Krone brought this action in the district court for Kimball County against Elsie F. Heidemann, a widow; Melba V. and Patrick J. Lacy, wife and husband; Marion G. and Ruth K. Heidemann, husband and wife; Llera A. and Gardner A. Nott, wife and husband; Edward Paul and Patsy Heidemann, husband and wife; Harold R. and Elda Heidemann, husband and wife; and Bernard G. Heidemann, a single person. The purpose of the action is to obtain a declaratory judgment fixing the rights of plaintiffs and defendants in and to the royalties that will accrue from certain lands by reason of the production of oil therefrom, such rights being based on certain instruments executed and delivered to the plaintiff Allen W. Krone by the defendants, and for an accounting of the royalties already received by the defendants therefrom. Francis Krone died while the action was pending and it was revived in the name of his heirs and the administrator of his estate.

The defendants all joined in two motions for summary judgment which the trial court sustained. Plaintiffs thereupon filed a motion for new trial and this appeal has been taken from the overruling thereof.

On December 17, 1949, Herman L. Heidemann owned in fee all of Sections 15 and 22 in Township 15 North, Range 56 West of the 6th P. M. in Kimball County, Nebraska, and, with his wife Elsie F. Heidemann, owned as joint tenants Section 14 and the north half and the southwest quarter of Section 23, in Township 15 North, Range 56 West of the 6th P. M. in Kimball County, Nebraska, being a contiguous tract of 2,400 acres. On that day Herman L. Heidemann and Elsie F. Heidemann, husband and wife, executed an oil and gas lease on these premises to R. C. Leake for a primary term of 10 years, which lease is still in full force and effect, in consideration of which the lessee, insofar as oil was produced from said premises, was to deliver to the lessors, free of cost, a ⅛th part thereof. This lease contained the following: "If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them on an acreage basis, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payments of said rentals. If the leased premises are now or hereafter owned in severalty or in separate

tracts, the premises, nevertheless, may be developed and operated as an entirety, and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire lease area. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may hereafter be divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks for the oil produced from such separate tracts."

The foregoing provision came into being primarily to avoid the hardships often imposed upon lessors, and their successors in interest, by reason of the rule of non-apportionment of royalties generally imposed by the courts in the absence of such a provision and, in turn, created benefits for the lessee and its assignees by defining with certainty its duties and responsibilities thereunder, thus avoiding many of the difficulties that were likely to arise under a lease without such a provision. It avoided any necessity of the lessee providing separate measuring or metering devices and separate receiving tanks for each separate tract developed; it made it possible for the lessee to develop the leased tract as a whole without causing injury to any of the separate owners of mineral rights therein by so doing; it thus created a basis for good will between the lessee and lessors and also between the lessors themselves by doing away with the usual causes of litigation; and it made certain that the lessee had no duty to offset wells. It would seem that it is a provision in a gas and oil lease that is beneficial to all who are parties thereto and certainly not against public policy.

Thereafter, on April 14, 1950, Herman L. and Elsie F. Heidemann, husband and wife, conveyed the southwest quarter of Section 23 to Melba V. Lacy, their daughter, and Patrick J. Lacy, her husband, as joint tenants subject to the oil and gas lease above referred to, thus conveying to the Lacys all the mineral rights

in this 160-acre tract. On December 20, 1950, Herman L. and Elsie F. Heidemann conveyed to the Lacys as joint tenants the north half of Section 23 subject to the oil and gas lease above referred to. but reserving to themselves one-half of the minerals, thus conveying to the Lacys 160 mineral acres in this 320-acre tract.

Acceptance of the conveyance "subject to an oil and gas lease" implies agreement by the grantee to the application of the entirety clause in the lease.

On December 20, 1950, Herman L. Heidemann, together with his wife Elsie F., conveyed the south half of Section 22 to Marion G. Heidemann, his son, and Ruth K. Heidemann, Marion's wife, as joint tenants but subject to the oil and gas lease above referred to, but reserving to Herman L. Heidemann one-half of the minerals. Thereafter, on January 26, 1951, Herman L. Heidemann together with his wife conveyed to Marion G. Heidemann, his son, and Ruth K. Heidemann, Marion's wife, the north half of Section 22 and the south half of Section 15 subject to the oil and gas lease above referred to, but reserving to Herman L. Heidemann a one-half interest in the minerals. Thus Marion G. and Ruth K. Heidemann became the owners of 480 mineral acres in the lands conveyed to them.

Herman L. Heidemann died testate on July 23, 1953, and by reason thereof his wife, either as a joint tenant or under the terms of his will, together with their six children became the owners of all the mineral interests in the 2,400-acre tract hereinbefore described which had not been conveyed during his lifetime, as hereinbefore set forth. Thus, Elsie F. Heidemann, the widow, Melba V. Lacy and Patrick J. Lacy, wife and husband, Marion G. Heidemann and Ruth K. Heidemann, husband and wife, Llera A. Nott, a daughter, Bernard G. Heidemann, a son, Edward Paul Heidemann, a son, and Harold R. Heidemann, a son, became the owners of all the mineral rights in the 2,400-acre tract upon the death of Herman L. Heidemann, but subject to the lease orig-

inally given by Herman L. Heidemann, now deceased, and Elsie F. Heidemann, his wife, to R. C. Leake.

R. C. Leake assigned the oil and gas lease he had obtained from the Heidemanns to the Sinclair Oil and Gas Company on December 21, 1949. On September 25, 1956, Sinclair Oil and Gas Company assigned or farmed out its interest under the lease in the south half of the northeast quarter and the north half of the southwest quarter of Section 23 to Petroleum Incorporated; on December 23, 1957, it assigned to or farmed out its interests under the lease to the south half of the northwest quarter of Section 23 to Lark Oil Company; and it either assigned or farmed out its interests under the lease in the east half of the southeast quarter of Section 14 to the Mid America Drilling Company.

On April 18, 1956, the Lacys, by "Mineral Deed," conveyed to Allen W. Krone an undivided one-half interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the southwest quarter of Section 23, but subject to the gas and oil lease already referred to. And on the same day the Lacys conveyed to Allen W. Krone a one-fourth interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the north half of Section 23, but subject to the oil and gas lease hereinbefore referred to.

The provision in the oil and gas lease hereinbefore set out, and which is generally referred to as an "Entireties Clause," had the following effect: "By the terms of an entirety clause, such as here, the parties thereto agree that in the event the mineral interests under the leased premises shall become separately owned the royalties shall nevertheless be treated as an entirety, the separate owners participating pro rata. * * * this voluntary provision in a lease has the effect of placing a restriction upon the power of the lessor to alienate his mineral interests therein contrary thereto as long as the lease containing such clause remains in

force and effect." Rauner v. Jones, 159 Neb. 385, 67 N. W. 2d 347. See, also, Hafeman v. Gem Oil Co., 163 Neb. 438, 80 N. W. 2d 139. Standing alone these two deeds would have given Allen W. Krone a 160/2,400th or a 1/15th interest in and to the ⅛th royalty provided for in the lease and produced from all the lands covered thereby. That is what the trial court held appellants were entitled to.

However, in connection with the execution of each of the mineral deeds the Lacys executed a memorandum, which Allen W. Krone accepted. Thereafter, on April 23, 1956, all of the other defendants having any interest in the minerals in and under these lands signed a "Ratification" of each of the mineral deeds. While many objections are made by the appellees to the sufficiency and validity of these instruments we shall assume, for the purpose of our holding herein, that the parties thereto sought, by means thereof, to convey to Allen W. Krone one-half of all the royalties that might accrue from any gas, oil, or other minerals that might be produced from the southwest quarter of Section 23 and one-fourth of all the royalties for any gas, oil, or other minerals that might be produced from the north half of Section 23, and nothing from any production thereof from the balance of the entire tract of 2,400 acres, and that is what appellants here contend they are entitled to.

As stated in Blum v. Poppenhagen, 142 Neb. 5, 5 N. W. 2d 99: " 'In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance.' "

It will be observed that the lessee was neither a party to the agreements here sought to be enforced nor made a party to this action.

On April 23, 1956, Allen W. Krone conveyed to his father whatever interests he had obtained in these premises.

Petroleum Incorporated developed two producing oil wells on the south half of the northeast quarter of Section 23 and one on the north half of the southwest quarter of Section 23; Lark Oil Company produced one oil well on the south half of the northwest quarter of Section 23; Mid America Drilling Company produced one oil well on the east half of the southeast quarter of Section 14; and Sinclair Oil and Gas Company produced one oil well on the north half of the northeast quarter of Section 23. As of August 1, 1957, Sinclair Crude Oil Company had become the purchaser of all oil produced from these wells.

The appellants put the question as follows: Is an assignment of royalties which may accrue by reason of the production of oil from a specific piece of land, which land is included in an oil lease, together with other lands, containing an entirety clause, enforceable? The question is stated by appellees as follows: The plaintiffs contend that even though a lease contains an entirety clause, the lessor and his grantees, without the lessee consenting, can contract to the effect that royalties shall be paid to separate owners in other than the proportion that the mineral acreage owned by the separate owners bears to the entire leased area. The question is, may the owners of all royalty interests under a lease containing an entirety clause agree among themselves for a different division of the royalties accruing thereunder than that fixed by the entireties clause and, if they do, is such an agreement enforceable among themselves?

After an oil and gas lease has been executed and delivered to the lessee, as was here done, the lessors therein have and retain three separate and distinct interests in the lands covered thereby and which are all part of the land itself. The first is the right to the sur-

face subject to the lessee's right of ingress and egress for the purpose of carrying out the lease itself; the second is the right to a reversion of the minerals in case the lease, or any part thereof, should be terminated for any reason; and the third is the right to receive accruing royalties, if any, under the lease by virtue of the removal of any minerals therefrom. Ordinarily such interests would all be subject to alienation by the owners in any manner that they might see fit to do so. See, 3A Summers, Oil and Gas (Perm. Ed.), § 572, p. 5; 42 Am. Jur., Property, § 52, p. 229.

Royalties may be accrued or unaccrued. Accrued royalty is merely a chose in action and personal property. It does not pass to the grantee of the land subject to the lease and may be transferred and assigned the same as any other personal property. On the other hand unaccrued royalty is an interest in the land and real property. See, Sullivan's Handbook of Oil and Gas, § 120, p. 222; Garza v. DeMontalvo, 147 Tex. 525, 217 S. W. 2d 988; Broderick v. Stevenson Consolidated Oil Co., 88 Mont. 34, 290 P. 244. As stated in Garza v. DeMontalvo, *supra:* "It is settled in this state that the interests retained by the landowner, under an oil and gas lease, including royalty, are interests in land." And, as stated in Broderick v. Stevenson Consolidated Oil Co., *supra:* "Oil remaining in the ground before recovery is a part of the land, and belongs to the owner of the land; * * *."

The entireties clause is a valid burden imposed upon the interests in the property retained by the lessors. As we said in Hafeman v. Gem Oil Co., *supra:* "A covenant in an oil and gas lease to pay rent or royalties is not personal or collateral but runs with the land." In 7 Oil and Gas Reporter, p. 70, in discussing Hafeman v. Gem Oil Co., *supra,* it was submitted that the above rule was sound, stating: "The entirety provision should be treated as a covenant running with the land and as such, binding upon lessor and his grantees." The lessors, by executing the lease, placed a restriction upon their

power to alienate any part of their estate in the land covered by the lease except in accordance with the provisions of the lease itself. That they had the right to do so and that such restriction is not against public policy has already been determined by this court. See, Rauner v. Jones, *supra*; Hafeman v. Gem Oil Co., *supra*. Such provision, being a covenant running with the land, imposed the same burden on any interest acquired by anyone from the lessors to the lease as upon the lessors themselves. As stated in Hafeman v. Gem Oil Co., *supra*: "The correct interpretation of the lease under the rule referred to above is that the entirety clause was not intended to be and is not divisible. * * * The obligation to pay royalties of necessity includes the duty to pay them as required by the entirety clause. This duty is extended, not divided, by an assignment of a portion of the leasehold."

We have come to the conclusion that by the terms of an entirety clause, such as is here contained in the gas and oil lease, the parties thereto agree that in the event the mineral interests under the leased premises become separately owned that the royalties shall nevertheless be treated as an entirety, the separate owners to participate pro rata, and that, by reason of the provisions of the entireties clause, the separate owners cannot convey any interest in their royalty rights therein contrary thereto.

We recognize there are holdings in other states contrary to the foregoing. However, we do not agree with the reasons those courts adopted for so holding. This is particularly true of cases which base their holdings on the fact that the lessee will not be harmed by the result arrived at because of the extent to which the leasehold has been developed. As stated in Iskian v. Consolidated Gas Utilities Corp., 207 Okl. 615, 251 P. 2d 1073: "In Gypsy Oil Co. v. Schonwald et al., supra, there was production from other portions of the lease, than that portion under which the royalty interest was

granted, and, in Eason v. Rosamond, supra, the matter of production from other portions of the lease was taken care of by stipulation. Thus, these cases are factually distinguishable from the instant case. In the instant case, the interests of the lessees are not involved and nothing in this opinion is intended to apply to or limit their rights under the provisions of the entirety clause. *In the event production is obtained from other portions of the lease, a different rule would apply."* (Emphasis ours.) We do not think the extent to which the leasehold has been developed is in any way controlling for if the provisions of an entireties clause are not against public policy, and they are not, and the parties voluntarily enter into a lease so providing then the provisions thereof should be and, in our opinion, are in effect at all times as to all parties thereto as long as the lease remains in force and effect.

Since the entirety clause is binding on the lessors, lessees, and all holding under them, it necessarily follows that all parties affected must consent to any change in the apportionment required by the clause in order to make such change effective.

There are other issues raised by appellees but in view of our holding herein we do not find it necessary to deal with them.

Having come to the conclusion that the lessors, and all parties holding under or through them, could not, by agreement entered into among themselves, make a change affecting the apportionment of the royalties provided for by the entireties clause in the lease, we affirm the trial court's judgment holding that appellants had a 1/15th interest in the ⅛th royalty from oil produced from the entire 2,400-acre tract.

AFFIRMED.