No. 56,958

Leo D. Brubaker and Ruth J. Brubaker, his wife, *Appellees*, v. Ivan G. Branine and Etta G. Branine, his wife, and Larry Branine, *Appellants*.

(701 P.2d 929)

Opinion filed June 21, 1985.

*Martin W. Bauer,* of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, argued the cause, and *Eric S. Strickler,* of the same firm, was with him on the briefs for the appellants.

*David J. Bideau,* of Bideau Law Offices, of Chanute, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, C.J.: The issues presented in this case stem from consolidated appeals taken by Ivan, Etta and Larry Branine (defendants-appellants) from a decision of the trial court deter-

mining liability on a motion for summary judgment and a subsequent judgment granting Leo D. and Ruth J. Brubaker (plaintiffs-appellees) a proportionate share of the landowners' royalties under an oil and gas lease containing an "entirety clause." The facts are not in dispute.

On September 20, 1976, the defendants, Ivan and Etta Branine, granted an oil and gas lease to Wayne D. Cox which covered the west one-half (½) and the southeast quarter (¼) of Section 5, Township 25, Range 11, in Greenwood County, Kansas. (At that time, Ivan and Etta Branine owned 100% of the mineral rights under the above-described land.) Then, in September 1977, they sold an undivided one-half (½) interest in their mineral rights to their son, Larry Branine. Under the terms of the lease, the lessors reserved a one-eighth (⅛) landowners' royalty which was to be paid by the lessee. The lease also contained an "entirety clause" providing:

"If the leased premises are now or hereafter owned in severalty or in separate tracts, the premises, nevertheless, may be developed and operated as an entirety, and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area."

The lease further provided that:

"[N]o change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof . . . ."

On October 27, 1976, the defendants conveyed a portion of the land covered by the September 20 lease to the plaintiffs, Leo and Ruth Brubaker. The parties stipulated that the plaintiffs acquired 65% of the total surface acreage subject to the lease. Neither the contract for sale nor the deed contained a reservation of mineral rights or an express modification of the "entirety clause" in the oil and gas lease. The conveyance to the Brubakers, however, was subject to the oil and gas lease, duly recorded, covering the premises here in question.

The lessee was never notified of the change of ownership. The defendants alleged that the plaintiffs failed to give notice to the lessee because of an oral agreement made at the time of sale that the entirety clause would be inapplicable and that the parties would receive nonapportioned royalties from wells physically located on their land. Because the contract and deed were unambiguous, the trial court refused to consider evidence of the

alleged oral agreement. *The propriety of the court's action on this point was not raised as an issue on appeal.* While it is incidentally mentioned in the defendants' brief on appeal, it is not argued and this court will consider this issue to have been abandoned. *Puritan-Bennett Corp. v. Richter,* 235 Kan. 251, 255, 679 P.2d 206 (1984).

The oil and gas lease herein involved was valid for a primary term of three years and so long thereafter as oil and gas was produced. Production was begun in March 1978 through a well drilled on the portion of the property owned by the Branines. The lessee paid the Branines 100% of the one-eighth (⅛th) landowners' royalty from 1978 until this lawsuit was filed in 1983. The defendants accepted all such payments.

On February 22, 1983, plaintiffs filed this lawsuit against Ivan and Etta Branine to recover a proportionate share of all landowners' royalties paid to the defendants from and after 1978. Larry Branine was not joined until May 16, 1983. Plaintiffs also requested an accounting of all oil and gas produced from the entire leasehold estate. Plaintiffs sued the lessee, all working interest owners, and all overriding royalty owners. All claims have been resolved except those against the defendants and the lessee. By the nature of its summary judgment ruling, the trial court did not have to reach the claims against the lessee.

The procedural aspects of this case in the trial court are cumbersome, and need not be stated. They are sufficient to present the issues herein determined.

On March 12, 1984, the trial court heard plaintiffs' motion for summary judgment on the issue of liability, which it granted. The journal entry dated April 25, 1984, reads in part:

"That by virtue of the real estate contract, joint tenancy warranty deed and provisions of the oil and gas lease covering said premises, Plaintiffs are entitled to receive a proportionate share of the oil and gas royalties produced and saved from the entire leased area since February, 1978 as a matter of law.

"[T]he applicable statute of limitations for this cause of action is five (5) years pursuant to K.S.A. 60-511."

At an April 18, 1984, hearing upon defendants' motion to alter or amend the prior judgment, the trial court, after admitting confusion in how to properly characterize the cause of action, ruled that liability was based upon equitable principles for an accounting and that liability was not limited by the doctrines of statute of limitations or laches. The foundation for the court's

analysis was that "[t]here are no legal obligations or agreements between the Branines and the Brubakers with respect to the royalty payments."

Defendants appealed from the trial court's summary judgment on the issue of liability and the statute of limitations, and from the trial court's order denying the motion to alter or amend that judgment.

Plaintiffs then filed a second motion for summary judgment for the dollar amount due under the trial court's initial judgment. The accounting was presented on June 18, 1984. The defendants and the plaintiffs agreed that a total of $115,365.52 had been paid to the defendants as landowners' royalties from February 1978 through February 1984. Plaintiffs and defendants also agreed that plaintiffs owned 65% of the total acreage covered by the oil and gas lease. Accordingly, the trial court granted summary judgment and awarded damages totalling $74,987.58. Defendants admitted that these amounts were mathematically correct based on the "liability" judgment. However, the defendants filed a second appeal from the money judgment. The appeals have been consolidated.

Two issues are presented on appeal: First, whether the trial court mischaracterized the plaintiffs' claim for relief, and second, whether the statute of limitations or laches should bar or limit the plaintiffs' claim for relief.

The defendants first contend that the trial court mischaracterized the cause of action involved in this case. They argue that plaintiffs have a remedy at law—not equity—in the form of a tort of conversion.

The trial court determined at the March 12 summary judgment hearing that the plaintiffs' claim was one at law based upon contract, and that the five-year statute of limitations applied. At the modification hearing, the court determined that the cause of action was, instead, one sounding in equity and that laches did not apply to bar recovery.

At the time the lease was executed, the only parties involved were the lessee (Cox) and the lessors (defendants). The lease provided that the lessee was to pay royalties to the lessors. Failure to do so would result in a breach of contract.

When the lessors conveyed a portion of the land covered by the lease, two clauses of that lease came into play—the "entirety

clause" and the "change of ownership clause." Had the entirety clause *not* been in the lease, the general rule in Kansas of nonapportionment would have applied—that is, the defendants would have been legally entitled to retain all of the landowners' royalties from the well drilled on their portion of the land under the lease. *Carlock v. Krug,* 151 Kan. 407, 99 P.2d 858 (1940). However, when the lessors executed a lease which contained an entirety clause they placed a restriction on their power to alienate any part of their estate in the land covered by the lease except in accordance with the provisions of the lease itself. *Krone v. Lacy,* 168 Neb. 792, 797-98, 97 N.W. 2d 528, (1959). That they had the right to do so and that such restriction is not against public policy has already been determined by this court. *Hoffman v. Sohio Petroleum Co.,* 179 Kan. 84, 292 P.2d 1107 (1956). Therefore, when a portion of the defendants' land was sold subject to the lease, the purchasers (plaintiffs) of the tract upon which no oil was produced were entitled to participate in royalties from oil produced from the defendants' tract based on their proportionate share of ownership.

The lessors (defendants) could have avoided apportionment under the "entirety clause" if they had included an express provision for nonapportionment in the deed or if they had reserved the mineral rights. 2 Williams & Meyers, Oil and Gas Law § 521.3 (1984). No such provisions were contained in the contract of sale or deed. Although the defendants claimed there was an oral agreement for nonapportionment at the time of sale, this issue is moot for the reasons heretofore stated. See *Quenzer v. Quenzer,* 225 Kan. 83, 587 P.2d 880 (1978). In the absence of a nonapportionment clause in the deed, the "entirety clause" applied and the plaintiffs, according to the terms of that clause, were entitled to share in the landowners' royalties according to their proportion of ownership.

The trial court's original determination that the parties' rights were fixed by the written contract was correct. The record title of the property involved showing the oil and gas lease with the subsequent deed conveying a portion of the leased premises to the plaintiffs, which was subject to the lease, must be construed together to fix the contractual rights between the parties. *Farmers & Merchants Bank v. Copple,* 190 Kan. 170, 373 P.2d 219 (1962); *Dearborn Motors Credit Corporation v. Neel,* 184 Kan.

437, 448, 337 P.2d 992 (1959); *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594 (1928). These contractual documents were in writing and the five-year statute of limitations applies. K.S.A. 60-511.

Since the plaintiffs did not receive the royalties to which they were entitled, the question becomes who, if anyone, is liable and to what extent?

At this point, a second provision in the lease must be examined—the "change of ownership clause". This clause was discussed in 3 Kuntz, Law of Oil and Gas § 45.3 (1967), as follows:

"The change of ownership clause is almost invariably present in the oil and gas lease forms in common use, and such clause usually provides that no change of ownership of the right to receive royalty shall be binding upon the lessee until after a prescribed period of time after he has received notice of such change of ownership in the manner also prescribed by the clause. Such clause is designed to permit the lessee to make payments provided for in the lease without being exposed to the risk of being required to pay royalty to a grantee of the lessor after the royalty has been paid in accordance with the former status of ownership. Thus, *although a new owner is entitled to receive royalties as against his grantor,* the lessee is not liable to the new owner for the payment of royalty until he has been provided with the notice or evidence of change of ownership prescribed by the change of ownership clause." (Emphasis added.)

In this case, the lessee was never notified of the change of ownership. If the lessee had received notice, the lessee would have had a *contractual* duty to pay the plaintiffs, and failure to do so would have resulted in breach of contract. However, in the absence of notice, there was no contractual duty running from the lessee to the plaintiffs, and the lessee was in compliance with the contract by paying 100% of the landowners' royalties to the defendants.

Although the lessee was contractually bound to continue to pay all of the royalty payments to the defendants, a portion of the royalties paid to and accepted by the defendants rightfully belonged to the plaintiffs according to the entirety clause contained in the lease. The plaintiffs, as new owners under the lease, were entitled to receive the royalties as against their grantors (defendants).

Both the plaintiffs and the defendants bore an equal responsibility to notify the lessee in writing of the change in ownership but failed to do so. Accordingly, the lessee is absolved of any liability for royalty payments already made to the Branines and for which the Brubakers sought an accounting.

This lawsuit is rightfully between the Brubakers and the

Branines for an accounting under the terms of an unambiguous written contract, construing the oil and gas lease and the title documents of record together. The five-year statute of limitations is applicable.

Accordingly, Ivan and Etta Branine must account to the Brubakers for one-half of 65% of the royalties due and payable under the lease by the lessee from and after February 22, 1978, and Larry Branine must account to the Brubakers for one-half of 65% of the royalties due and payable under the lease by the lessee from and after May 16, 1978.

The judgment of the trial court is affirmed in part and reversed in part, and remanded with directions to ascertain through an accounting the correct money judgment to be entered for the Brubakers and against the Branines in accordance with the foregoing opinion.